(No. 13326.—Decree affirmed.)

ELMER E. DICK *et al.* Appellants, *vs.* DANIEL GOLDBERG *et al.* Appellees.

*Opinion filed October 23, 1920—Rehearing denied Dec. 9, 1920.*

1. DEEDS—*rules of grammatical construction will prevail unless intention appears to the contrary.* The rules of grammatical construction will ordinarily be followed in ascertaining the meaning of written instruments, but the object of construction is to effectuate the intention of the parties, and the language must be considered in the light of the circumstances surrounding the parties and of all the provisions of the instrument.

2. BUILDING LINES—*doubtful provision must be resolved against restriction.* Where it is doubtful whether a building line restriction is to be perpetual or to cease at the expiration of a certain period the doubt must be resolved against the restriction.

3. SAME—*vendor of property may impose such lawful restrictions as he sees fit.* The owner of property, in selling it, may impose such restrictions on its use as he sees fit, provided that the restrictions violate no law and are not contrary to public policy, and he may establish for the benefit of other lots a permanent building scheme restricting the time, use, location or value of buildings which may be erected on each of the lots in the tract, and the restrictions will be binding on each purchaser who has notice of the scheme and may be enforced by each grantee against the others.

4. SAME—*limited restriction cannot be made perpetual by oral statements of grantors—notice.* Where conveyances by the original owners of property subdivided into lots contain restrictions against the erection of flat-buildings for a period of twenty years, mere verbal statements of grantors that flat-buildings will never be erected because the character of the neighborhood will become fixed at the expiration of the period cannot be relied on to extend the restriction beyond twenty years as against subsequent purchasers having no notice of anything which does not appear of record.

5. SAME—*appearance of neighborhood is not notice to purchasers of restrictions not of record.* Where building line restrictions appearing of record are expressly limited to a certain period of time, the fact that purchasers, after the expiration of the period, are familiar with the general appearance of the locality, the character of the houses in the vicinity, their general location with respect to the streets and their use as dwelling houses does not constitute notice of the existence of restrictions which do not appear of record.

6. SAME—*when restriction against flat-buildings is limited to twenty years.* A provision in a deed that the grantee shall not build "any building known as a flat or tenement building, hereby covenanting to erect thereon only a single private. dwelling house (excepting the stable as aforesaid) for a period of twenty years from this date," limits the prohibition against flat or tenement buildings to twenty years and does not apply solely to the erection of single private dwellings.

APPEAL from the Superior Court of Cook county; the Hon. CHARLES M. FOELL, Judge, presiding.

° DONALD L. MORRILL, ANGUS ROY SHANNON, and NAHUM MORRILL, for appellants.

SONNENSCHEIN, BERKSON, LAUTMANN & LEVINSON, CHARLES L. BARTLETT, and ROBERT HUMPHREY, for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

Elmer E. Dick, William F. Healy, Eugene M. Hoyne and Ida Tennes filed a bill in the superior court of Cook county against Daniel Goldberg, Kate Goldberg, Albert Auwaerter, and others, praying for an injunction restraining the defendants from constructing an apartment hotel upon lots 11 and 12 of block 6, in Cochran's Second addition to Edgewater, in Cook county, at the northwest corner of Granville and Kenmore avenues, which the defendants the Goldbergs and Auwaerter owned as tenants in common. The bill was answered, the cause was heard upon oral and documentary evidence, a decree was entered dismissing the bill for want of equity, and the complainants have appealed.

The appellants are the owners in severalty of different lots in Cochran's Second addition to Edgewater. That addition was laid out by a plat recorded on December 21, 1888, containing no restrictions as to buildings or the use of any of the lots, and no agreement for such restrictions is shown unless such agreement is to be inferred from the deeds by which the lots were conveyed or the advertise-

ments and representations under which they were sold. The appellants and the appellees acquired title to the lots which they respectively own, through *mesne* conveyances from the original proprietors. Each of the conveyances from the original proprietors contains the following restrictions, differing only as to the cost of the buildings which might be constructed:

"It is hereby expressly covenanted and agreed that neither said party of the second part, nor her heirs, executors, administrators or assigns, shall erect any fence, enclosure or obstruction to view on said lots within thirty feet of the front or side street line of said lots for a period of ten years from the date hereof, and shall not build any wall of any building erected on said lots within said thirty feet of the front or side street line of said lots for a period of twenty years from the date hereof, without the written consent of said party of the first part.

"It is also hereby expressly covenanted and agreed that neither said party of the second part, nor her heirs, executors, administrators or assigns, shall build or cause to be built on said lots any building or structure (except a stable, which shall be built on the alley line of said lots,) the fair, actual cost of which shall be less than $6500, for a period of twenty years from this date, without the written consent of the said party of the first part.

"It is hereby expressly covenanted and agreed that neither said party of the second part, nor her heirs, executors, administrators or assigns, shall build or cause to be built on said lot any building known as a flat or tenement building, hereby covenanting to erect thereon only a single private dwelling house, (excepting the stable as aforesaid,) for a period of twenty years from this date.

"No spirituous or malt liquors shall be sold on any portion of the herein granted premises at any time."

The deed from the original owner to the grantor of the appellees was dated January 4, 1899, so that when they ac-

quired title on May 21, 1919, the limitation had expired as to all the restrictions except that relating to the sale of spirituous or malt liquors. All the lots are in that part of Cochran's Second addition to Edgewater fronting upon Kenmore avenue and Sheridan road between Thorndale avenue and Devon avenue, and it is alleged in the bill that all those lots were sold by the original proprietors of the subdivision subject to restrictions of the same character, tenor and effect as the restrictions just mentioned, differing only as to the dates of creation and expiration and the limitation as to the cost of the improvements; that the original restrictions upon most of the lots have not expired according to their terms; that the original proprietors of the subdivision adopted a general plan for the improvement of the territory on Sheridan road and Kenmore avenue between Thorndale and Devon avenues, which provided, among other things, that no flat-building or apartment house or tenement house, or structure other than single dwelling houses, each to be occupied by one family, should be constructed in such territory, but that the same should be restricted exclusively to dwelling houses such as are usually occupied by one family, and that each lot should have a building line thirty feet from the front or side street line; that John Lewis Cochran and others associated with him were the agents to sell the lots, and they advertised the sale extensively, and represented to prospective purchasers that the territory was restricted to residences and single dwelling houses; that flat-buildings, apartment buildings, tenement houses, hotels, and structures of a character other than single dwelling houses, could not be erected in the subdivision, and that the complainants relied upon such representations, which were continuing in character and were made to protect the general public in their purchase of the parcels of real estate; that these restrictions have been observed and the territory has been maintained as an exclusive residence section, and on that account has been rendered especially attractive to per-

sons desiring to establish and maintain family homes. It is further alleged that the defendants propose to erect upon their lots, and are now erecting, an apartment hotel fronting on Kenmore avenue, practically covering the entire area of their lots, which structure violates the restriction imposed upon their lots "by reason of the character of the said building so being erected and its proximity to the street line on Kenmore and Granville avenues."

Phinias P. Cahana testified that he was concerned with the sale of this property for Cochran and the other original proprietors of the addition; that he made the sale of the property owned by the appellees to Fred K. Gardner and made a great many sales of other parcels. He sold the lot now owned by Elmer E. Dick to John W. Means, and told him that the property was restricted as to building line, character and value of buildings, and he made the same statement to all other purchasers he sold to and made that a great point. It helped to sell the property. They would not have bought if those restrictions had not been made. He had a similar conversation with Gardner, making the same statements. He told purchasers very particularly that flat-buildings could not be erected upon the property and it was not expected that such buildings would ever be erected there, and that was done in every case. The property was widely advertised in all the daily newspapers. Means also testified that the agent told him that in the future no flat-buildings could be located on that property, and he relied upon that representation in making the purchase, and those representations led him to make the purchase at the price he did.

The appellants' argument is based upon two propositions: (1) That the restriction against the erection of flat-buildings and tenements is perpetual, with an affirmative covenant that for twenty years only single buildings should be erected on each lot; (2) that a permanent building scheme was adopted by the original proprietors intended for

the benefit of the vendee of each lot in the tract, and that each purchaser, if he had notice, is subject to the restrictions of that scheme in the use of his lot for the benefit of every other purchaser. The appellants insist that the third paragraph of the restrictions imposes a perpetual restriction against the erection of flat-buildings and contains an affirmative covenant upon the part of the grantee that for twenty years only a single dwelling house would be erected on the lot; that is, that the words "for a period of twenty years" qualify only the last clause of the paragraph, which covenants for the erection of a single private dwelling house. They argue that the first part of the paragraph is an express negative prohibition against the erection of a flat-building and is complete in itself, and that the covenant following is an incidental clause creating an affirmative duty, to which, alone, the twenty-year limitation applies. They rely upon the maxim that "relative words must ordinarily be referred to the last antecedent where the intent upon the whole deed or instrument does not appear to the contrary and where the matter itself does not hinder it, the last antecedent being the last word which can be made an antecedent so as to have a meaning." (Broom's Legal Maxims, 528.)

The rules of grammatical construction will ordinarily be followed in ascertaining the meaning of the language of written instruments; but the object of construction is to effectuate the intention of the parties, and the language must be considered in the light of the circumstances surrounding the parties and all the provisions of the instrument. The above maxim itself includes an exception, where the intent upon the whole instrument does not appear to the contrary and the matter itself does not hinder. From a reading of the restrictions cited it is apparent that the intention was to limit the restrictions, in all their features, as to time. The erection of any fence, enclosure or obstruction to view within thirty feet of the front or side street lines was limited to a period of ten years. The building of any wall

of any building within the same space was limited to twenty years. The cost limit of any building expired in twenty years. At the expiration of twenty years all building restrictions were gone except (if the contention of the appellants is sustained) as to the erection of an apartment building. The result would be that after the expiration of twenty years from the date of his deed the owner of any lot could erect upon it a building covering the entire lot or any number of small structures he might see fit and use them for any purpose he might desire. He might permit to be erected and used a church, a hospital, a moving picture theater, a garage, a grocery, a machine shop, junk shop, warehouse or meat market, but he could not build a flat or tenement building. It cannot be inferred that the grantors intended any such result. Rather, it seems more consistent with the whole of the instruments that the intention was to restrict the character of buildings to be erected for a limited time to prevent the erection of flat or tenement buildings during that time, and, to make assurance doubly sure, to require a covenant to erect only a single private dwelling house for the period of twenty years, the limited period applying both to the flat or tenement building which could not be erected and the private dwelling which could. The construction which makes the limitation of twenty years apply to the prohibition of apartment buildings as well as to the covenant for dwelling houses is within the words of the maxim, "where the intent upon the whole deed or instrument does not appear to the contrary." Even if it were doubtful whether the restriction was to be perpetual or to cease at the expiration of twenty years, the doubt must be resolved against the restriction. *Loomis* v. *Collins,* 272 Ill. 221; *Eckhart* v. *Irons,* 128 id. 568.

There is no doubt that the owner of property, in selling it, may impose such restrictions on its use as he sees fit, provided that they violate no law and are not contrary to public policy, and that a permanent building scheme re-

stricting the time, use, location or value of buildings or structures which may be erected on each of the lots in the tract for the benefit of other lots may be established, which will be binding upon each purchaser who has notice of the scheme and may be enforced by each grantee against the others. (*Wiegman* v. *Kusel*, 270 Ill. 520; *Loomis* v. *Collins, supra; Hays* v. *St. Paul M. E. Church*, 196 Ill. 633.) The only restrictions upon the use of their property of which the appellees had notice were those contained in the deed to their remote grantor, Gardner, and the face of the deed showed that they had expired. They were assured by their immediate grantor, Mrs. Ryan, that there were no restrictions on the use of the property except the prohibition of the sale of spirituous and malt liquors,—and this was in accordance with the facts appearing of record in their chain of title. If restrictions can be imposed by the oral declarations of a grantor inconsistent with the restrictions actually written into the deed, there is no evidence that the appellees had notice of any such restrictions. In fact, the evidence which is relied upon to show that such restrictions existed does not do so. The statement of Cahana, the agent who sold the property, which is relied upon, was only that the property was restricted as to building line, character and value of buildings. The restrictions in the deed were in accordance with that representation. He stated further that flat-buildings could not be erected upon the property and it was not expected that such buildings would ever be erected there. Under the restriction in the deed flat-buildings could not be erected upon the property, and no doubt it was expected that at the expiration of twenty years the character of the neighborhood would be fixed and that flat-buildings would never be erected there. This was the mere statement of an expectation and not a perpetual restriction upon the use of the property. The advertisements that were published are not shown, but it cannot be assumed that they were any broader than the testimony of the witness as to

his conversation. Even if these statements were to be regarded as representations which would estop the grantors from afterward denying that the use of the property was not perpetually restricted, they could not be binding upon their grantees without notice. There is no evidence whatever of notice to the appellees of anything which does not appear of record or was not visible on the premises. If they had examined the record of all the deeds to all the lots in the territory in question they would have found no restriction extending beyond twenty years from the date of the deeds. They had a right to rely on the record. It is shown that they were familiar with the general appearance of the locality, the character of houses that were constructed in that territory, their general location with respect to the streets, their occupation as dwelling houses and the general character of the neighborhood as a residential district, but this was no notice to them of the existence of restrictions upon the property which they proposed to buy which did not appear of record.

The appellants rely upon the cases of *Tallmadge* v. *East River Bank,* 26 N. Y. 105, and *Allen* v. *City of Detroit,* 167 Mich. 464. In the first of these cases the owner of all the lots on both sides of a street made a map of the street called St. Mark's place, showing it to be seventy-six feet wide, eight feet being added on each side. He then erected sixteen dwelling houses of a superior class on one side of the street and thirteen on the other, all upon a uniform line eight feet back from the alleged line of the street. He exhibited this plan to purchasers and represented to them that the street would always remain as laid out, and that when he laid out the street and built thereon he gave up and dedicated eight feet of land on each lot to be used as a part of the place. He afterward sold two of the lots to a purchaser who erected a building upon one of them upon the corner, giving a deed containing no restrictions. It was held that the selling and conveying of the lots by the original owner

under the circumstances and with the assurances which he gave, bound him in equity and good conscience to use and dispose of the remaining lots so that those assurances would be kept and fulfilled, and that any subsequent purchaser from him with notice of the equity between him and previous purchasers would not stand in a different situation from the original owner.  The defendant held through *mesne* conveyances and bought with notice that it was claimed there were restrictions which would prevent him from acquiring a right, as purchaser of the lot, to build upon the eight feet described as a court yard.  The opinion contains the statement that "the uniformity of the position of all the houses on St. Mark's place was probably sufficient, alone, to put the defendant on inquiry."  This statement, however, was repudiated by the Court of Appeals of New York in the case of *Bradley* v. *Walker*, 138 N. Y. 291, in which it was claimed that the purchaser was charged with notice of a building line because the houses on the street were set back eight feet from the front line of the lots, the court saying:  "There is some claim made that the defendant may be charged with notice of the original agreement because, when purchasing, he found a court yard there in front of the house.  It is quite true that he found the houses set back eight feet from the line of the street, but he was not bound to know from that circumstance that there was any binding agreement in reference to the open space, and it could not be assumed that there was."  In the Michigan case the restrictive covenants were not inserted in the deeds to all the lots conveyed but they were part of a general plan for the tract, which was advertised and held out to the general public and was an inducing cause for the purchase of the lots.  The purchases were all made with reference to these restrictions, and it is stated in the opinion that early in the negotiation of the municipal authorities for the acquisition of the title for the purpose of erecting an engine house, the municipal authorities had specific

notice that the property was restricted to residential purposes. It is apparent that the case has little similarity to this, where the lots were bound by express restrictions which it is sought to extend by oral statements by the grantors, of which it does not appear that the subsequent grantees had notice.

The decree of the superior court will be affirmed.

*Decree affirmed.*