## Clarke & Company, Appellee, v. Fidelity & Casualty Company of New York, Appellant.

### Gen. No. 6,876.

1. INSURANCE, § 391*—*limitation of liability under burglary policy.* A policy of burglary insurance limited the liability in case of goods stolen from a show window by a person who shall have broken the glass thereof from the outside. *Held,* that this did not apply where the door of an island display window was pried open and goods stolen therefrom.

2. INSURANCE, § 120*—*construction of policy.* In construing a policy of insurance, it is the duty of the court to ascertain, if possible, the intention of the parties from the written or printed words used by them in the contract.

3. INSURANCE, § 120*—*construction where contract plain and unambiguous.* If the words of a contract of insurance are plain and unambiguous, it must be so construed as to give effect to the plain and obvious import of the language used unless to do so would lead to unreasonable or absurd consequences.

4. INSURANCE, § 120*—*what to be considered in construing policy.* In determining the significance of language used in a policy of insurance, the situation of the parties, the nature of the subject-matter and the purpose sought to be accomplished may be considered by the court.

5. INSURANCE, § 120*—*construction of policy.* The meaning of a contract of insurance may frequently be determined by resort to the doctrine of probability and reasonableness.

6. INSURANCE, § 120*—*construing policy.* In construing a policy of insurance, the instrument should be read and considered as a whole.

7. INSURANCE, § 129*—*construction of burglary policy.* An island display window facing the street and separated from the main store by an arcade open at all times, but the top of the island display window forming the floor of the second story, and its floor the ceiling of the basement, is not a "show case located outside of the premises" within the meaning of a burglary policy excluding goods in such show case.

8. INSURANCE, § 129*—*construction of burglary policy as to exclusions.* Where a burglary policy excluded public entrances, public halls and public stairways from its provisions, an island

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

display window facing the street and separated from the main floor by an arcade, which was always open to the public, is not excluded.

9. INSURANCE, § 129*—*construction of burglary policy as to property covered.* A policy of burglary insurance covering goods stolen from "the interior of a building" includes goods stolen from an island display window facing the street and separated from the main room by an arcade but the top of which formed the floor of the second story and its bottom the ceiling of the basement, since such display window comes within the usual definition of "interior."

10. INSURANCE, § 129*—*construction of policy.* The maxim *"Expressio unius est exclusio alterius,"* the expression of one thing is the exclusion of another, applies in the construction of a policy of insurance, and hence where a burglary policy covered goods in the entire premises except in certain specified places, goods in a display window not specifically excluded were covered by the policy.

Appeal from the County Court of Peoria county; the Hon. ROBERT H. LOVETT, Judge, presiding. Heard in this court at the October term, 1920. Affirmed. Opinion filed March 17, 1921.

HUNTER, PAGE & KAVANAGH, for appellant.

KIRK & SHURTLEFF, for appellee.

MR. JUSTICE HEARD delivered the opinion of the court.

Appellant issued to appellee, who conducted a dry-goods store in Peoria, a burglary insurance policy. While the policy was in force between the closing of the store on the evening of November 20, 1919, and its opening for business the next morning, a locked glass door of what is known as an island display window of the store was pried open with a tool which left visible marks on the metal frame of the door and a Hudson seal coat, a vanity case, a coral necklace and a mesh bag were stolen from the island show window. Appellee brought suit on the policy against appellant and a trial was had before the court without a jury. On the trial it was stipulated by the

parties that the fair cash market value of the coat
was $675, of the vanity case $12.50, and that appel-
lant's liability, if anything, was $25 each for the mesh
bag and coral necklace. The court found for appellee
and rendered judgment against appellant for $737.50
damages and costs of suit from which judgment this
appeal was taken.

Appellant filed the general issue and five special
pleas, the fifth of which was later withdrawn. The
second plea denied all liability on the ground that the
stolen goods were not taken, "from within the prem-
ises" as defined by the insurance policy. Appellant's
third plea set up that certain of the articles taken
were articles of jewelry on which appellant's liability
was limited. This was admitted by the stipulation of
facts and properly taken into consideration by the
court in fixing appellee's damages. Appellant's fourth
plea denied all liability under a clause of the policy
which stated that there should be no liability for loss,
"on any show case, or contents thereof, located out-
side of the premises." Appellant's sixth plea set up
that appellant's liability under the policy was limited
to $200 as a whole and to $25 as to any one article
under a certain clause of the policy, hereinafter set
forth.

The policy provides among other things that the
insurance company shall indemnify appellee "for all
loss by the felonious taking of property from within
the premises." The policy then defines "Premises"
as follows: "If the Assured occupies the entire
building designated in the schedule, the term is limited
to the interior of the said building, excluding public
entrances, public halls, and public stairways." Ap-
pellee occupied the entire building.

The policy also provides: "The Company shall
not be liable for any loss on property abstracted from
within a show window of the premises by a person
who shall have broken the glass thereof from the out-

side, in excess of $200.00 such as respects any one article to a limit of $25.00."

This is the clause of the policy upon which the sixth plea was based. The glass of the island display window was not broken and there was, therefore, no evidence in the case to substantiate the sixth plea.

The policy also provided that appellant should not be liable for loss "on any show case, or contents thereof, located outside of the premises."

The policy contains no mention of an island display window. The main question in the case, therefore, is whether this island display window is a part of "the interior of the building" or is a "show case located outside of the premises" or whether it is entirely without the provisions of the policy as answering neither of these descriptions.

In construing a policy of insurance, it is the duty of the court to ascertain, if possible, the intention of the parties from the written or printed words used by them in the contract. *Swartz v. Hiler* (Mo. App.), 207 S. W. 258; *White v. Greenwood,* 40 Cal. App. 113, 180 Pac. 45.

If the words of the contract are plain and unambiguous the contract must be so construed as to give effect to the plain and obvious import of the language used, unless to do so would lead to unreasonable or absurd consequences. *Bearss v. Ford,* 108 Ill. 16; *Kansas City v. Public Service Commission,* 276 Mo. 539, 210 S. W. 381. In *Wilkinson v. Ætna Life Ins. Co.,* 240 Ill. 205, in construing a policy of insurance which provided indemnity in case injury to the insured were sustained "in consequence of the burning of a building in which the insured shall be at the commencement of the fire," the court said: "The word 'building,' as used in this form of policy, should be held, we think, to include the contents of said loft. It has been repeatedly held that a contract of insurance like the one on which this suit is based, if there

is any ambiguity in the language used in the policy, as the language found in the policy is that of the insurance company and not of the insured, should be favorably construed on behalf of the insured and so as not to defeat a recovery in favor of the insured.''

In determining what significance should be given to language where used in a contract, the situation of the parties, the nature of the subject-matter with which they are dealing and the purpose sought to be accomplished are matters to be considered by the court. *Raleigh Lumber Co. v. William A. Wilson & Son,* 69 W. Va. 598; *Snider v. Robinett,* 78 W. Va. 88, 88 S. E. 599; *Wetterwald v. Woodall,* 83 W. Va. 647, 98 S. E. 890. The meaning of a contract may frequently be determined by resort to the doctrine of probability or reasonableness. *Leezer v. Fluhart,* 105 Wash. 618, 178 Pac. 817; *Carns v. Bassick,* 175 N. Y. Supp. 610. In the constructions of a contract the instrument should be read and considered as a whole. *Hunter v. Gulf Production Co.* (Tex. Civ. App.), 220 S. W. 163; *Mikusch v. Beeman* (Wash.), 188 Pac. 780; *Dick v. Goldberg,* 295 Ill. 86.

In addition to the provisions of the policy heretofore quoted, it, and the schedule attached thereto, contain the following: ''No. 1. Property, within the meaning of this policy, is limited to such articles of merchandise as are commonly carried in the line of business conducted by the Assured, as specified in Statement No. 5 of the schedule.'' Section 5 of the schedule contains the following: ''The business conducted by the Assured in the premises is that of dry goods, etc.'' ''3. The address of the premises is 102-4-6 S. Adams Street, Peoria, Illinois.'' ''4. At the said address of the premises, the Assured occupies entire building used as follows: Dry goods in basement, First and Second floors, rugs and draperies on third floor, dressmaking and workroom on the fourth floor.''

The premises 102-4-6 S. Adams St. have a street

frontage of about 70 ft., the central portion of which consists of the island display window in question. This island display window is approximately 44 ft. 9 in. long and 6 ft. wide with a floor space of over 250 square feet. Its front abuts upon the street sidewalk and its other three sides abut upon a passageway or arcade, about 6ft. in width, which is open to the public at all times. This arcade is provided with no means of excluding the public therefrom. The entrance to the storeroom proper consists of revolving doors opening from this arcade about opposite the center of the island display window.

The island display window was inclosed on all sides with glass set in metal frames, the lower part being heavy clear plate glass and the glass at the top of the front and back was prism glass so constructed as to throw light from the street towards the rear of the building. In its front were four upright pillars covered with marble in which were steel beams forming supports for the front of the building. These pillars also contained pipes carrying steam for heating purposes to the upper floors of the building. The floor formed part of the ceiling of the basement and the ceiling formed part of the floor of the second story of the building. Under this ceiling there were metal pipes extending towards the rear of the building forming part of a sprinkling system installed throughout the building for fire protection. The island display window was made to withstand heat, cold and the elements. The entrances to it were at the corners most remote from the street, glass paneled doors with metal frames the glass panels being 2 ft. 8¼ in. wide and 6 ft. 8½ in. high, the doors being furnished with locks.

From this description it is manifest that this display window was not "a show case located outside of the premises" but was an integral part of the building and that, therefore, appellee's action is not barred

by reason of anything contained in appellant's fourth plea.

The only remaining question is were the goods stolen from within the premises, i. e., from "the interior of the building."

The Century Dictionary defines "interior" as "Being within; inside of anything that limits, incloses or conceals; internal; opposed to exterior or superficial; as, the interior of a house." "Exterior" is defined as "The outer surface or aspect; the external features; as, the exterior of a building." "External" is defined as "pertaining to the outside merely; superficial"; and "superficial" is defined as "lying in, on or pertaining to the superficies or surface; not penetrating below the surface literally or figuratively; being only on the surface." March's Thesaurus gives "inside" as the kindred term and "outside" as the antithesis of "interior."

Keeping in mind these definitions it is clear that the island display window was in fact a part of the interior of the building.

By the terms of the policy, public entrances, public halls and public stairways in the interior of the building were specifically excluded, and these parts of the interior having been specifically excluded by a familiar rule of construction, all other parts of the interior of the building must have been intended to be included under the provisions of the policy. *Finley v. Steele,* 23 Ill. 56; *Rubens v. Hill,* 213 Ill. 523. *Expressio unius est exclusio alterius.* The expression of one thing is the exclusion of another. Co. Litt. 210a. The express mention of one thing, person or place implies the exclusion of another. Black's Law Dict. 468. The agent of appellant visited and inspected the premises before issuing the policy, and while the policy contains over thirty limitations and exceptions, goods in the island show window are not specifically excepted. The policy provides that "PROPERTY, with-

in the meaning of this policy, is limited to such articles of merchandise as are commonly carried in the line of business conducted by the Assured, as specified in Statement No. 5 of the schedule," and that specification is that "The business conducted by the Assured in the premises is that of dry goods, etc." The address of the premises is given as 102-4-6 S. Adams Street, Peoria. The clause of the schedule which next precedes No. 5 of the schedule recites that at said address of the premises the assured occupied the entire building and specifies the use to which each floor is put. It was evidently the intention of appellee and appellant's agent to have the policy cover all such articles in the building 102-4-6 S. Adams Street, Peoria, as were commonly carried in the line of business then conducted.

When all the terms of the policy are considered together, we are clearly of the opinion that goods stolen from the island display window in question were stolen "from the interior of the building" as that term is used in the policy of burglar insurance upon which suit was brought, and that appellant is therefore liable therefor.

The judgment is affirmed.

*Affirmed.*