## Dave Feigenbaum, Appellee, v. Aetna Casualty and Surety Company, Appellant.

### Gen. No. 7,908.

1. INSURANCE—*when loss by holdup at insured's "place of business" within terms of policy.* Under a policy of insurance against robbery or holdup covering the insured's place of business, a loss by holdup of the insured by persons entering the rear door of the building in which insured conducted his business and made his residence who compelled the insured to conduct them to an inner room fitted up and used by insured as an office, from which they took the day's receipts of insured's business, was a loss from a part of the building covered by the policy.

2. INSURANCE—*insured residing in rooms in rear of store building as "custodian regularly at work on premises" within meaning of policy.* Where a policy of insurance against loss by robbery or holdup provided that there should be no liability for a loss unless a custodian, defined as the insured or some person in his employ, was regularly at work on the premises at the time of the loss, the conditions of the proviso were sufficiently met where the insured resided in rooms in the rear of the building in which he carried on his business, and he was awakened by the robbers in the nighttime and fraudulently induced to open the rear door, after which he was compelled to conduct them to an inner room used as an office, where the actual robbery was perpetrated.

3. INSURANCE—*conditions governing construction of insurance contracts.* In construing a policy of insurance the court should consider the instrument as a whole and endeavor to ascertain the intention of the parties from the written words used, taking into account the situation of the parties, the nature of the subject matter with which they are dealing, and the purpose which the parties sought to accomplish.

4. INSURANCE—*construction of policies to avoid loss of indemnity contracted for.* Policies of insurance should be construed in favor of the insured so as not to defeat, without a plain necessity, his claim for indemnity, which, in taking the insurance, it was his object to secure.

5. INSURANCE—*construction of policies against insurer in case of ambiguity.* Where there is ambiguity in contracts of insurance, or where the meaning is uncertain, the construction should be strictly against the insurer, for the obvious reason that insurance contracts are prepared by the insurer.

Appeal by defendant from the Circuit Court of Macoupin county; the Hon. FRANK W. BURTON, Judge, presiding. Heard in this court at the October term, 1925. Affirmed. Opinion filed April 15, 1926.

WILLIAM L. PATTON, for appellant.

TRUMAN A. SNELL and JESSE PEEBLES, for appellee.

MR. PRESIDING JUSTICE NIEHAUS delivered the opinion of the court.

This is an appeal from a judgment for $620 rendered in the circuit court of Macoupin county in an action of assumpsit brought by Dave Feigenbaum, the appellee, against the appellant, Aetna Casualty

and Surety Company. The suit was instituted to recover a loss suffered by the appellee on a policy of insurance against robbery or ''holdup.''

The robbery by which the appellee suffered the loss in question occurred on February 9, 1924, at his store and residence, located at 235 Rice Street in Carlinville, where he carries on a general merchandise business. The appellee's testimony in reference to the robbery and the place where it occurred, is as follows: ''The storeroom is in the north end and immediately south of the storeroom are my living quarters and office. The office is right south of the south part of the store and you enter it from the store through a glass door. I had an office desk and filing cabinet and that is where I wrote my letters. The office is 50 feet from the front door and persons coming in there to go to the office would have to go the length of the store and through the glass door. * * * On Saturday, February 9, I opened the store about 8 o'clock in the morning and closed the business for that day about 9 o'clock at night. My wife and I conducted all the business in the store that day. I had a sale on shoes that day and took in $700, none of which was banked, because I was too busy to go down to the Bank to make the deposit. My Bank was about a mile and a half or two miles from my place of business. On that afternoon I counted my money and placed it in the filing cabinet ready to go down to the Bank, but I got busy waiting on people and when I got an opportunity to go to the Bank it was closed. * * * After I closed the store we had lunch and retired to bed about 10 o'clock. The bedroom in which I slept that night is marked 'bedroom' on the plat, Exhibit 1. The space marked 'hallway' is where I kept my filing cabinet and desk and my office was in the corner of that hall at the place where the plat is marked 'office.' * * * The room north of the bedroom I call the 'stock room' and the large room south of the kitchen is the

dining room.   The large room in front of all these rooms I have named is the store.   After retiring I was awakened by my wife and got up and went towards the door leading into the kitchen from the east side.   That is an outside rear door to the building and there is no other entrance door to the building from the south side.   The only other entrance is the store door at the north end of the building.   When I went to the rear door I had not quite opened the door when two men shoved in with guns.   I asked them who it was and they said they wanted to call the doctor, some one being sick.   They wanted to use the phone.   I am accustomed to being waked up at that time of night by people wanting to use the telephone. I did not know the two men and they were masked with black cloths over their faces and said 'Stick 'em up or we will blow your brains out.'   They said that to me and my wife and we did stick 'em up.   They saw a ring on my wife's finger and they said they would bite it off if she didn't give it to them and she took it off and they took it.   They made me show where the money was kept by putting their guns against my ribs and I showed them where the money was in the filing cabinet in the corner of the room that I call my office. They ransacked my cabinet, throwing things out and emptied my desk drawer and got the money out of the filing cabinet.   It was in a roll and there was $608.00 in cash and $15.50 in checks.   *   *   *   I lost $620.00. After they got the money they told us to stay there for thirty minutes and not move or we would have our heads blown off and they then ran out through the door that they came in.   I then gave my wife some water as she had fainted when they took off her ring and I then went for my gun which was in my dresser in the bed room and ran outside and shot.   I then woke my neighbor, Mrs. Hoy, who lives right across from the rear part of our store and then called up the police.''

Appellant contends that there is no legal right of recovery under the facts presented by the record, for two reasons, which it insists are apparent:

"First—that the robbery was not from the premises covered by the policy, to-wit: the place of business of appellee; and,

"Second—that at the time of the robbery there was no custodian regularly at work within the premises."

The policy in question contains two paragraphs with reference to the custodianship of the property covered by the insurance, namely:

"4. CUSTODIAN, within the meaning of this policy is limited to either the Assured or a person in the Assured's employ (excluding watchman) not less than seventeen years of age and not more than sixty-five years of age, and authorized by the Assured to act as the Assured's messenger, paymaster, collector or cashier, and while so acting to have the actual care and custody of property covered under this policy. * * * A. The Company shall not be liable for any loss: 11. Under Insuring. Clause B unless a custodian as herein defined is regularly at work within the premises at the time of loss."

It may be said with reference to the first contention that the robbery in question was committed in the office of the appellee, which is directly and specifically mentioned in the policy, and covered by the policy. As to the second contention, namely, that at the time of the robbery there was no custodian regularly at work within the premises, it may be said that this involves a construction of that part of the policy relating to custodianship. In this case the custodian was the assured himself, and, by the terms of the policy, the assured could act as his own custodian or he could employ some other person to act as custodian, within certain limitations defined by the clause referred to, and if he employed some other person, such person while acting must have had the actual care and

custody of the property covered under the policy. It is reasonably clear, considering all the clauses in relation to custodianship together, that the words "unless a custodian as herein defined is regularly at work within the premises at the time of the loss," does not have reference to the assured himself, but to another person when employed by the assured to act as custodian. The words "regularly at work within the premises" can have no reasonable significance except in the sense that the custodian employed was performing the work involved in his duty of taking care of, or guarding, the property in his custody. But assuming that the clause mentioned did refer to the assured as custodian, the evidence shows that he was on duty in caring for his property and guarding it, otherwise the robbers would not have found it necessary to make him "stick 'em up" while consummating the robbery. In construing a policy of insurance, the court should consider the instrument as a whole, and endeavor to ascertain the intention of the parties from the written words used, taking into account the situation of the parties, the nature of the subject matter with which they are dealing, and the purpose which the parties sought to accomplish. *Grand Lodge Knights of Pythias v. Fidelity & Deposit Co. of Maryland,* 223 Ill. App. 516, 520. It is well settled: "Policies of insurance should be liberally construed in favor of the insured so as not to defeat, without a plain necessity, his claim for indemnity, which, in taking the insurance, it was his object to secure." *Tucker v. American Bonding & Casualty Co.,* 223 Ill. App. 266; *Hartsock v. Kaskaskia Livestock Ins. Co.,* 223 Ill. App. 433; *Weisguth v. Supreme Tribe of Ben Hur,* 194 Ill. App. 17, 19. "Where there is ambiguity in contracts of insurance; or where the meaning is uncertain, the construction should be most strictly against the Insurance Company, for the obvious reason, that insurance contracts are prepared by the insurer, and ambiguous

words or terms will therefore be construed against the insurer." *Oberman v. United States Fire Ins. Co.*, 313 Ill. 172. *Christ v. Mutual Life Ins. Co.*, 312 Ill. 525, aff'g 231 Ill. App. 439.

The judgment is affirmed.

*Judgment affirmed.*