**Frank M. Pierce, d/b/a Pierce Boat Service, Plaintiff-Appellee, v. Standard Accident Insurance Company, a Corporation, Defendant-Appellant.**

Gen. No. 11,875.

Second District.

May 4, 1966.

Rehearing denied June 8, 1966.

Baker, McKenzie & Hightower, of Chicago, for appellant.

Snyder, Clarke, Dalziel, Holmquist & Johnson, of Waukegan, for appellee.

ALLOY, J.

This is an appeal from a judgment entered in a declaratory judgment action finding that defendant Standard Accident Insurance Company must defend plaintiff Frank M. Pierce, d/b/a Pierce Boat Service and also pay any judgment entered against him in a pending lawsuit arising from the theft of a boat, trailer and motor from the yard of the business establishment operated by plaintiff, Frank M. Pierce. On appeal in this court,

defendant complains that the occurrence (involving the theft of a trailer which was being repaired by plaintiff) was not covered by the policy of insurance, on the basis that (1) it involved the theft of a trailer licensed for highway use and of property, while unattended, on that trailer being items specifically excluded from coverage by the policy, and, (2) that plaintiff is barred from bringing his suit because he failed to comply with policy provisions requiring commencement of any action on the policy within 12 months from the inception of the loss.

The facts in the record disclose that plaintiff Frank M. Pierce was in the business of selling and servicing boats and boat supplies under the name of Pierce Boat Service. Before plaintiff made application for a commercial endorsement on a fire insurance policy, an agent of the company had made a preliminary investigation of the premises and of the business and had checked the stock, the locks on the doors, the premises outside of the building, including the property lines, and noted that both boats and trailers were outside of the building. At the time of the examination, there were approximately 6 or 8 trailers, most of them with boats on them, and approximately 25 boats on the premises outside of the building itself. The investigator made no comment with reference to the boats or trailers outside the building on the premises but stated that he would approve the policy and would issue it. The policy was issued to plaintiff which consisted of a Commercial Property nonreporting endorsement on the Standard fire and extended coverage insurance policy issued to plaintiff.

On July 28, 1959, one Richard Burt delivered to plaintiff a boat, motor and trailer owned by Burt so that plaintiff could make certain repairs on the boat which was 17 feet long. Some work remained to be done on the boat on said date and plaintiff closed his shop at 10:30 p. m. At that time the trailer with the boat and

motor on it was parked outside of the building on the insured premises. After that time no one remained on the premises to watch the boat. During the night, as shown by the record, the boat and trailer were stolen and, apparently, had been hooked onto an automobile by the thieves who drove the entire trailer and boat away. Neither trailer nor boat were recovered thereafter.

Plaintiff filed his claim for loss by theft with the defendant company. Such claim was refused by defendant on September 15, 1959, on the ground that the loss was not within the terms of the policy. On January 21, 1960, Richard Burt, the owner of the boat filed a suit against plaintiff for damages, which action is still pending and undisposed of in the Circuit Court of Lake County, Illinois. Thereafter plaintiff requested that defendant defend the suit brought against him under the terms of the policy of insurance, but defendant refused to defend on the ground that plaintiff was not covered by the policy. On January 24, 1961, plaintiff filed an action for declaratory judgment against defendant and as a result of such action the trial court found that under its policy the Standard Accident Insurance Company was obligated to defend the suit brought against plaintiff by the owner of the boat, and trailer, and also to pay any judgment assessed against Pierce in that suit within the limits of the policy.

The portions of the policy with which we are principally concerned provide under a section relating to exclusions and limitations:

"This policy does not cover: 3. Automobiles, motor trucks, trailers, and similar vehicles licensed for highway use or held for sale . . .

"C. (Peril)—This policy does not insure against any loss caused by or resulting from:

227

"8. Theft (including attempt thereat) of property while unattended in or on any motor vehicle or trailer, unless contained in a fully enclosed and securely locked body or compartment of such vehicle and theft results from forcible entry, evidenced by visible marks, into the body or compartment but this exclusion shall not apply to property in the custody of carriers or bailees for hire;"

Also in lines 157–161 of the Standard Fire Policy there is the following provision:

"No suit or action on this policy for recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within 12 months next after inception of the loss."

█ It is noted that the policy under consideration specifically covers "all risks of direct physical loss of or to the property covered." The property covered was described as "stock of goods, wares and merchandise of every description, consisting principally of BOAT AND MARINE SUPPLIES." It expressly included property of others within the description which was left with the insured for storage or repairs. It is apparent that the exclusionary clauses were designed to cover items taken from vehicles, and not the taking of the entire vehicle and its contents. It can hardly be rationalized that the boat involved, which was 17 feet long with its motor and trailer, should be in a "fully enclosed and securely locked body or compartment of such vehicle." Also, for the theft to fall within the exclusion it had to result from "forcible entry evidenced by visible marks, into the body or compartment." The trailer upon which the boat and motor rested had neither a body nor a

228

compartment. There could hardly be visible marks on a nonexistent body or compartment. It was a typical trailer of the kind seen by the investigator on plaintiff's premises. The investigation by defendant prior to the writing of the policy was made for the purpose of affording coverage to plaintiff's business and property of the type involved in the cause before us was located on the premises of the insured.

In Sally Chain Stores, Inc. v. Ace Bonded Carriers, Inc., 307 Ill App 644, 30 NE2d 966, there was an exclusionary clause which was similar to the one now before this court. In that case, the delivery vehicle was stolen with the packages in it. The vehicle was later recovered but the packages were missing. The court in that case indicated (at page 651):

> "The provision in question was not intended to apply to a case where the thief drove away with an automobile and its contents, but it was intended to apply to a case where a thief took a package or packages *from* an automobile or truck while it was standing unattended at a place of delivery and where the automobile or truck was not 'equipped with a fully enclosed body, all windows and doors of which shall have been securely locked at the time of such loss and there be visible evidence of violent or forcible entry'. . .

> "Policies of insurance are to be liberally construed in favor of the insured, and where there is any ambiguity in the policy the rule is that all provisions, conditions or exceptions which in any way tend to limit or defeat liability thereunder should be construed most favorably to the insured . . .

> "Certainly it cannot be reasonably argued that the provision in question clearly supports cross-defendant's interpretation of it. If cross-defendant had

intended that the policy should not cover a case like the instant one it would have been an easy matter for it to insert a provision that would have plainly covered the type of theft present in the instant case."

The defendant contends that the Sally case should be rejected as a precedent for the reason that in such case the theft excluded was taking of a package or packages "from" an unattended vehicle. Defendant contends that the language of the policy in the instant case using the words "in or on" creates a different situation so far as liability is concerned. We see no significant distinction in the use of such language so far as ultimate liability on the policy is concerned. Similarly, in the case of Universal Coffee Co. v. American Ins. Co., 5 Ill App2d 319, 125 NE2d 643, which is relied upon by defendant, the policy did not offer coverage for a theft and exclude coverage when taken "from" or "in or on" any vehicle, but in that case simply insured against theft resulting from violent forcible entry into vehicles equipped with bodies of entirely closed construction provided all the doors were locked.

The courts of this State have repeatedly held that where there is any ambiguity in a policy of insurance or questions as to appropriate construction, the policies are to be liberally construed in favor of the insured. The rule is that all provisions, conditions or exceptions which in any way tend to limit or defeat liability thereunder should be construed most favorably to the insured (Sally Chain Stores, Inc. v. Ace Bonded Carriers, Inc., 307 Ill App 644, 30 NE2d 966 at page 651; Ziolkowski v. Continental Cas. Co., 365 Ill 594, 7 NE2d 451). It is apparent in the case before us that the exclusionary clause relied upon by defendant does not specifically provide for the occurrence which actually happened. The policy was designed to cover the prop-

erty of plaintiff and excluded loss only to property taken by theft while unattended on a trailer unless such property was in a fully enclosed and securely locked body or compartment of the trailer and unless the theft resulted from forcible entry evidenced by visible marks into the body or compartment of the vehicle. There was no breaking into the trailer which would be evidenced by visible marks. It is obvious that both the insured and the insurer intended to cover the 17-foot boat with no requirement that this be enclosed in a securely locked body or compartment.

■ ■ The circumstances of the issuance of the policy and the object and purpose of the contract are significant and should be considered in determining whether there was coverage. The policy in the case before us was issued to cover the business operation of plaintiff and the construction sought for by defendant would have completely nullified that objective. As stated in Grand Lodge Knights of Pythias v. Fidelity & Deposit Co. of Maryland, 223 Ill App 516, at page 520:

> "In construing any instrument, the purpose for which it is made should be kept in mind. Contracts of guaranty insurance are made for the purpose of furnishing indemnity to the assured and should be liberally construed for the accomplishment of that purpose. American Surety Co. of New York v. Pauly, 170 US 133.

> "In construing a policy of insurance, it is the duty of the court to consider the instrument as a whole and to ascertain, if possible, the intention of the parties from the written words used by them, taking into consideration the situation of the parties, the nature of the subject matter with which they are dealing and the purpose sought to be accomplished. White v. Greenwood, 40 Cal App 113, 180 Pac 45; Raleigh Lumber Co. v. Wilson, 69 W Va

231

598; Hunter v. Golf Production Co. (Tex Civ App), 220 SW 163; Dick v. Goldberg, 295 Ill 86.

"In construing an insurance policy, if there is any ambiguity and the language found in the policy is that of the insurer and not of the insured, it should be favorably construed on behalf of the insured so as not to defeat a recovery in favor of the insured. Wilkinson v. Aetna Life Ins. Co., 240 Ill 205; Clark & Co. v. Fidelity & Casualty Co. of New York, 220 Ill App 576."

As further stated in Feigenbaum v. Aetna Casualty & Surety Co., 240 Ill App 502, at 507, it is well settled that policies of insurance should be liberally construed in favor of the insured so as not to defeat, without plain necessity, the insured's claim for indemnity which, in taking the insurance, it was his object to secure. In the instant case, plaintiff was entitled to the protection he sought when he purchased the insurance which included protection against the type of loss involved. This was obviously intended by the parties. This fundamental consideration overrides any narrow or technical interpretation of clauses which might operate to defeat such coverage.

 The second basic question before us is whether the action instituted by plaintiff was brought within the proper time under the terms of the policy. The Standard Fire Insurance Policy contained a clause to the effect that suit must be commenced within "12 months next after inception of the loss." This is a typical provision found in such policies and relates to damage claims normally covered by such Standard policies, such as fire or windstorm damage where the date of inception of the loss could easily be determined and the 12-month period could be calculated readily. An entirely different situation is involved in determining "the inception of

the loss" under the facts in the instant case. The boat which was stolen was the property of a Mr. Burt and did not belong to the plaintiff. If Burt had not sued the plaintiff for loss of the boat, then plaintiff would have no loss of any kind. While it is debatable whether the provision referred to actually limits the time for filing suit on the commercial endorsement portion of the policy, assuming that the 12-month clause is applicable, it is clear that the provisions of the policy make it one of indemnity rather than liability. As stated in United States Fidelity & Guaranty Co. v. Maryland Cas. Co., 182 Ill App 438, at 445:

> "It may be remarked that the employer's liability policy here involved is a contract of indemnity as distinguished from a contract which insures directly against liability. The policy indemnifies the coal company 'against loss from the liability imposed by law,' etc., and condition 'F' of the policy provides that no action shall lie against the insurer to recover for any loss under the policy, unless it shall be brought by the assured for loss actually sustained and paid in money by the assured in satisfaction of a judgment after trial of the issue.

> "In Poe v. Philadelphia Cas. Co., 118 Md 347, it was said by the Court of Appeals of Maryland: 'In tracing the history of these policies, it will be found the earlier ones were so worded as to insure employers against liability incurred to their employes for death or injuries resulting from the employer's negligence; and the courts humanely and rationally held that liability was fixed by the rendition of a final judgment, and that the casualty companies were liable on their contract, though the employer had not actually discharged his liability by payment.' "

To the same effect is Illinois Tunnel Co. for Use of Farrell v. General Acc., Fire & Life Ins. Co., 219 Ill App 251. It is noted that in the instant case the insuring clause which would be applicable to the theft of the boat covers plaintiff "to the extent that the insured shall be liable by law for loss thereto or shall prior to the loss have specifically assumed liability therefor . . ." Since plaintiff is the "insured" the only manner in which he could become liable for the loss of the other property would be for a judgment to be rendered against him. No judgment has as yet been rendered against him because the action by Burt as against the plaintiff is still pending and not disposed of. Nor has he specifically assumed liability for the theft. It is, therefore, apparent that the 12-month period would not have commenced at the date of the theft and that the declaratory judgment action was properly brought within the time specified in the policy.

No question is raised as to the portion of the order of the Trial Court which directs that the defendant undertake the defense of the action against Pierce. Since this question was not raised on appeal it is deemed to be waived. The determination of the Trial Court that the defendant Standard Accident Insurance Company is obligated to pay any judgment assessed as against plaintiff within the policy limits was proper and the judgment of such Court should be affirmed.

We must, therefore, conclude that the judgment of the Circuit Court of Lake County was proper and should be affirmed.

Affirmed.

CORYN, P. J., concurs.

STOUDER, J., dissenting.

234

I do not agree with the majority of the court. In my opinion the judgment of the Circuit Court should be reversed.

In the first place neither the opinion of the court nor the brief of Appellee suggests any theory or offers any reason for disregarding the provision of the policy excluding from coverage, "automobiles, motor trucks, trailers, and similar vehicles licensed for highway use or held for sale . . . ." This provision excludes coverage with respect to any hazard, not merely theft. Accordingly, I find no basis for Appellant's obligation for loss of the trailer since it was admittedly licensed for highway use.

In the second place I believe that the theft which occurred was excluded by the clear and unambiguous terms of the exclusionary provision. It has often been said that contracts of insurance are like other contracts and the intention of the parties is to be sought from the plain meaning of the words employed. It is only when the language is vague, uncertain or ambiguous that resort to other rules of construction such as that of liberality in favor of the insured or of interpretations favoring coverage rather than exclusion from coverage is appropriate. In Universal Coffee Co., Inc. v. American Ins. Co., 5 Ill App2d 319, 125 NE2d 643, the court reached an opposite result from that in Sally Chain Stores, Inc. v. Ace Bond Carriers, Inc., 307 Ill App 644, 30 NE2d 966, although each case involved the theft of a delivery vehicle and its insured contents. From an analysis of the foregoing cases it can only be concluded that it is the difference in the language employed in the policy which accounts for the differences in result. In Sally Chain Stores the court concluded that the theft of the contents did not take place "from" the vehicle. Thus "from" means

removal of the property at the time of the theft while the phrase "while in or on," as used in the instant case, means location at the time of the theft.

Although I might agree that enclosure of the boat and motor "while in or on a trailer" might be impractical it certainly is not impossible as urged by Appellee. However, in my opinion, this fact is immaterial since I know of no requirement that each condition be applicable to all circumstances and if not so applicable such provision is thereby rendered ambiguous. The boat and motor could either have been removed from the trailer or the boatyard could have been attended under which conditions the property would have been covered.