CHICAGO TERMINAL CLEARANCE,
INC., a Corporation, Plaintiff-
Appellant,

v.

ST. PAUL FIRE AND MARINE INSUR-
ANCE CO., a Corporation, Defendant-
Appellee.

GENERAL ELECTRIC COMPANY, a
Corporation, Third-Party Plaintiff,

v.

CHICAGO TERMINAL CLEARANCE
INC., a Corporation, Third-Party
Defendant.

No. 17126.

United States Court of Appeals
Seventh Circuit.

Feb. 14, 1969.

Barney L. Hollowick, David S. Ches-
row, Chicago, Ill., for appellant.

John P. Gorman, Jacob T. Pincus,
Clausen, Hirsh, Miller & Gorman, Chi-
cago, Ill., for appellee.

Before CASTLE, Chief Judge and
KILEY and FAIRCHILD, Circuit
Judges.

CASTLE, Chief Judge.

This appeal arises from an action
brought by plaintiff, Chicago Terminal
Clearance, Inc., against defendant, St.
Paul Fire & Marine Insurance Company,
to recover under an insurance policy,
issued to plaintiff by defendant, for the
losses suffered by plaintiff as the result
of the theft of a loaded truck which was
in plaintiff's custody at the time it was
stolen. The owner of the cargo, General
Electric Company, filed a third-party
action against plaintiff in which judg-
ment was rendered for its stipulated
loss of $74,000. That judgment is not
contested in this appeal. Rather, plain-
tiff appeals from the judgment of the
District Court which limited its recovery
against defendant to $49,750.[1]

The loaded truck was stolen by per-
sons unknown while it was parked over-
night in plaintiff's yard awaiting un-
loading the following morning. The
pertinent provisions of the policy are as
follows:

"3. This policy covers on shipments
of lawful goods for which the insured

---

1. $50,000 less the $250 deductible, as provided in the policy.

may be legally liable as a bailee and or warehouseman and or common carrier and or contract carrier, while loaded for shipment and or in transit and while unloaded in depots, warehouses, loading docks or platforms but only while in the custody of the insured for transportation.

"4. The policy insures (except as hereinafter provided) the legal liability of the insured as a carrier for loss or damage to goods described herein, directly caused by perils for which the insured is legally liable under the Uniform Bill of Lading approved by the Interstate Commerce Commission or other tariff documents, contracts or shipping receipts, including loss or damage caused by Acts of God, if the insured is held legally liable therefore.

\*   \*   \*   \*   \*   \*

"Section 6:

### LIMITS OF LIABILITY

A. $50,000.00 on any one vehicle. $100,000.00 on two or more vehicles.

### TERMINAL.

B. $100,000.00 at any one place at any one time on goods described herein while in depots, warehouses or on loading docks or platforms but only while in the custody of the insured for transportation.

"Endorsement dated July 15th, 1964. It is understood and agreed this Company's Terminal Limit of Liability provided for in Paragraph No. 6 of endorsement No. 1 is hereby increased from One Hundred Thousand Dollars ($100,000.00) to Two Hundred Fifty Thousand Dollars ($250,000.00)."

The issue before us on appeal is not whether the loss was covered, but the extent to which defendant's liability for the loss was limited by the policy. Thus, plaintiff claims that Section 6B applies to its loss, entitling it to recover the full $74,000. Plaintiff argues that the policy should be construed to provide "that when a vehicle is on the highway, coverage is limited as set forth in Section 6A, and when the journey of the vehicle comes to an end and has arrived at its place of destination in the 'terminal' or 'depot,' then, Section 6B applies to any loss occurring in the 'terminal' or 'depot.'" Defendant, on the other hand, claims that Section 6B applies only to the loss of goods which have been unloaded, and Section 6A applies to goods while they are loaded on a vehicle regardless of where that vehicle is when the loss occurs.

■■ Although we agree with plaintiff's argument that the truck was within a "terminal" or "depot" as those terms are used in the policy, we read the clauses in question as limiting the defendant's liability to $50,000 on goods which are still loaded on a vehicle, and as extending the liability to $250,000 with respect to goods which have been unloaded but remain in the insured's custody in a depot or on a loading dock etc. We come to this conclusion in full awareness of the rules of construction cited by plaintiff. Thus, contracts of insurance must be construed as a whole [2] and, where ambiguity exists and the policy is "fairly susceptible of two different constructions, the one will be adopted that is most favorable to the insured." Thompson v. Phenix Insurance Company, 136 U.S. 287, 297, 10 S.Ct. 1019, 1923, 34 L.Ed. 408 (1890). However, these well-established rules of construction may be invoked in favor of the insured only if the contract is "fairly susceptible of two different constructions," and the court will not strain to find ambiguity where, in fact, none exists. See Farber v. Great American Insurance Company, 406 F.2d 1228 (7th Cir., February 13, 1969); Miller v. Madison County Mutual Auto Insurance Company, 46 Ill.App.2d 413, 418, 197 N.E.2d 153 (1964); Hawkeye-Security Insur-

---

**2.** Martindell v. Lake Shore National Bank, 15 Ill.2d 272, 283, 154 N.E.2d 683 (1958);

Pierce v. Standard Acc. Ins. Co., 70 Ill. App.2d 224, 231, 216 N.E.2d 818 (1966).

**554**

ance Company v. Myers, 210 F.2d 890, 893 (7th Cir. 1954).

Section 3, the "Coverage Clause," includes within the insurance coverage all goods, both loaded and unloaded, that come within the custody of plaintiff for the purpose of transportation. Section 4, the "Insurance Clause," provides that defendant will be liable to plaintiff for damages to such goods for which plaintiff is legally liable. Section 6, then, fixes the monetary limits of defendant's liability in two general situations. The present controversy concerns the scope of these situations.

If paragraph B of Section 6 were read alone, there would be a strong case for holding for the plaintiff, since the goods were in the "terminal" or "depot" at the time of the theft. However, such a holding would ignore the presence of Paragraph A of Section 6. Reading them together, as we must, and viewing them in light of Sections 3 and 4, as we must, the only reasonable conclusion which can be reached is that the insurer limited its liability to $50,000 for loss of goods while they are loaded "on any one vehicle" and to $250,000 while not on a vehicle but rather unloaded from the vehicle and "in depots, warehouses, or on loading docks or platforms" of the insured.

This conclusion is bolstered by the fact that the greater coverage would be expected to be sought for the situation in which the greatest potential risk lay. Thus, a $250,000 maximum liability was provided for unloaded goods in a terminal or on a dock, which might include the cargoes of many trucks awaiting transfer. Conversely, liability was restricted to $50,000 where the loss involved the cargo of but one loaded truck. Therefore, the conclusion we reach is not only dictated by the language of the contract but has a reasonable basis in fact.

The judgment below is affirmed.

Affirmed.