MANAGEMENT SUPPORT ASSOCIATES, Plaintiff-Appellant, v. UNION INDEMNITY INSURANCE COMPANY OF NEW YORK *et al.*, Defendants-Appellees, (Frank B. Hall & Company of Illinois, Defendant).

First District (4th Division)   No. 84—359

Opinion filed December 20, 1984.

William I. Goldberg and John H. Ward, both of Antonow & Fink, of Chicago, for appellant.

Jacobs, Williams & Montgomery, Ltd., of Chicago (Barry Kroll, Joseph Vallowe, and Lloyd E. Williams, Jr., of counsel), for appellees.

JUSTICE JIGANTI delivered the opinion of the court:

This is a declaratory judgment action to determine whether the insurer is obligated to defend and indemnify its insured. The trial court entered judgment in favor of the insurer. The plaintiff, Management Support Associates (MSA), was insured by the defendants, Union Indemnity Insurance Co. of New York and Union International Insurance Co., Ltd. (collectively "Union Insurance"), for liability arising out of "negligent acts, errors, or omissions" in MSA's performance of architectural and engineering services it was to provide under a contract MSA entered into with the United States Army Corps of Engineers. In addition, the policy also covered "life support" services provided by MSA (such as housing, food service, maintenance, recreational and other facilities) for personnel working in connection with the Corps' air base construction project in the Negev Desert in Israel.

The specific focus in this action is on whether Union Insurance's duty to defend and indemnify MSA for its performance of "life support" services arises for all claims filed, as is asserted by MSA, or whether this duty arises only for claims arising from MSA's "negligent acts, errors or omissions," as is asserted by Union Insurance. If the duty arises as a result of the latter, the next inquiry is whether the complaint sufficiently alleges potential acts within the policy's coverage.

Pursuant to its obligation under this contract, MSA leased the Palace Hotel in Tel Aviv, Israel, for three years from its owner, Etablissement Nahal (Nahal). Subsequent to the expiration of the lease, Nahal filed a complaint against MSA in the Israel District Court of Tel Aviv-Yaffo seeking damages in the amount of $3,857,763 for damage done to the hotel. MSA tendered the Nahal

complaint to Union Insurance for defense and indemnity. Union Insurance refused to defend against the tendered complaint, asserting that in order to invoke a duty to defend, the instant insurance policy required that the claim be "caused by a negligent act, error or omission" attributable to MSA and that no such duty existed because the Nahal complaint alleged only a breach of lease which sounded solely in contract.

MSA then brought this action for a declaratory judgment that Union Insurance is obligated under the policy to defend and indemnify MSA against the Nahal suit. MSA presented alternative arguments, arguing first that the Nahal complaint was covered under the policy, notwithstanding the fact that the complaint only alleged a contract action and not a "negligent act, error or omission," because an endorsement to the policy served to delete the "negligent act, error or omission" requirement. Secondly, MSA argued that even with the endorsement construed as retaining the "negligent act, error or omission" requirement, the Nahal complaint was still covered because the complaint contained sufficient allegations of negligent conduct on the part of MSA to potentially bring the suit within the policy's coverage.

Both sides moved for summary judgment. The trial court ruled in favor of Union Insurance, finding that the "negligent act, error or omission" clause remained in effect and that the Nahal complaint failed to allege any negligent conduct on the part of MSA. This appeal followed.

The coverage in the original insuring agreement, an Architects/Engineers Professional Liability Policy, provided that:

> "The Company will pay on behalf of the Insured all sums *** which the Insured shall become legally obligated to pay as damages for claims *** if such legal liability arises out of the performance of professional services for others in the Insured's capacity as an architect or an engineer or such *other professional capacity* as may be included within the schedule and if such legal liability is caused by a negligent act, error or omission of the Insured *** in connection with the project defined in the schedule." (Emphasis added.)

This policy placed two requirements upon Union Insurance's legal liability; (1) such legal liability must arise out of the performance of certain defined services; and (2) such legal liability must be caused by a negligent act, error or omission of MSA.

The schedule, referred to in the "Coverage" section of the policy, defined professional capacity as:

"Professional, technical, management assistance and life support services to U. S. Army Corps of Engineers in conjunction with construction of airfield in the Negev in Israel."

However, under the heading of "Exclusions," the policy provided under exclusion 1(a) that:

"This insurance shall not apply to claims, or to claims expenses arising from such claims, alleging, arising out of or seeking the performance of services not customary for an architect or engineer."

As a result of an obvious conflict that existed between the scope of services covered in the original insuring agreement and schedule, which included services not customary for architects and engineers, such as management assistance and life support services, and exclusion 1(a), which excluded coverage for services "not customary" for architects and engineers, the parties added an endorsement to the policy. This endorsement provided:

"It is hereby understood and agreed that the policy is amended as follows:

Anything to the contrary notwithstanding the coverage afforded this policy shall apply for such legal liability which arises out of the performance of professional, technical, management assistance and certain life support services to the U. S. Army Corps of Engineers (COE) as stipulated in Contract DACA-52-79-C-000.

It is further specifically understood and agreed that exclusion 1(a) under *Exclusions* is deleted in its entirety."

■■■ In the case at bar, neither party has cited to this court any authority that has construed an insurance policy similar to the one in the instant action. Rather, both sides speak in terms of the following general legal principles with regard to construction. The general rules of construction which apply to other contracts equally apply to insurance contracts. (*State Farm Mutual Automobile Insurance Co. v. Salerno* (1984), 121 Ill. App. 3d 384, 459 N.E.2d 1075.) Where the language of the policy is clear and unambiguous, it must be given its plain, ordinary and popular meaning. (*Johnson v. State Farm Mutual Automobile Insurance Co.* (1979), 78 Ill. App. 3d 144, 396 N.E.2d 1190.) However, the question of whether a policy is ambiguous is a matter of law, in which the court examines the language at issue in light of the policy as a whole. (*Ohio Casualty Insurance Co. v. Tyler* (1980), 85 Ill. App. 3d 410, 407 N.E.2d 77.) In making its determination the court must construe the policy in its entirety, giving effect to every part of the policy as is possible, in-

cluding endorsements. *Weiss v. Bituminous Casualty Corp.* (1974), 59 Ill. 2d 165, 319 N.E.2d 491.

The instant insurance policy is specifically entitled "Architects/ Engineers Professional Liability Policy." Such a nonmedical professional liability policy is often called an "errors-and-omissions policy." (See 7A Appleman, Insurance Law & Practice sec. 4504.01 (Berdal ed. 1979); *Bettenburg v. Employers Liability Assurance Corp.* (D. Minn. 1972) 350 F. Supp. 873.) This is a policy that provides "a specialized and limited type of coverage as compared to comprehensive insurance [general liability]; it is designed to insure members of a particular professional group from the liability arising out of a special risk such as negligence, omissions, mistakes, and errors inherent in the practice of the profession." (7A Appleman, Insurance Law & Practice sec. 4504.01, at 310 (Berdal ed. 1979); see also Triunfol, *Professional Liability of Architects and Engineers* 1964 Ins. L. J. 461.) The language in the instant original insuring agreement provided MSA with the exact type of coverage as was described in Appleman. However, a distinguishing characteristic to this professional liability policy is that it was also designed, as was provided in the schedule, to include MSA's performance of services not customary for an architect or engineer, *i.e.*, "life support" services. Thus, when the instant policy is viewed in its entirety, it is both a professional and general liability policy.

On appeal MSA contends that the endorsement to the policy explicitly defines and revises the policy coverage. MSA argues that the "negligent act, error or omission" clause in the original insuring agreement was deleted by the endorsement and that MSA's conduct need not be negligent in order to be covered under the policy. MSA asserts that to continue to include the "negligent act, error or omission" clause in the policy as the trial court has done is to ignore the words, syntax and purpose of the endorsement.

With regard to the words of the endorsement, MSA contends that the original insuring agreement incorporated by reference the definition of professional capacity as contained in the schedule and that together, the agreement and the schedule included all the services covered under the policy. MSA argues that the second paragraph of the endorsement, in revising the coverage, retained as a requirement the performance of the same services as was contained in the original insuring agreement and the schedule, but conspicuously omitted the requirement with regard to a "negligent act, error or omission." MSA contends that a fair reading of the plain language in the endorsement results in the deletion from the policy of

the "negligent act, error or omission" requirement.

In further support of this position, MSA directs this court's attention to the syntax of the original insuring agreement and the endorsement. MSA asserts that the original insuring agreement defined the legal liability for which Union Insurance agreed to pay on behalf of MSA and then placed two requirements upon "such legal liability." These requirements were that "such legal liability [arise] out of the performance of [certain] professional services ***" and that "such legal liability [be] caused by a negligent act, error or omission of [MSA] ***." MSA next asserts that the endorsement, using the exact phrase "such legal liability," imposed only the first requirement for coverage, the scope of services, and was silent as to the "negligent act, error or omission" requirement. Thus, MSA argues that as a matter of grammar and logic, the endorsement necessarily served to delete the "negligent act, error or omission" clause.

Lastly, MSA contends that the language in the original insuring agreement and the language in the endorsement conflict and that based on *Sentry Insurance v. Hogan* (1982), 111 Ill. App. 3d 638, 640, 444 N.E.2d 761, "[i]f an insurance contract contains inconsistent or conflicting clauses, the clause which affords the greater or more inclusive benefit for the insured will govern." Furthermore, an endorsement to an insurance policy controls over the conflicting terms of the original policy. (*J. M. Corbett Co. v. Insurance Co. of North America* (1976), 43 Ill. App. 3d 624, 357 N.E.2d 125.) MSA argues that the endorsement, interpreted to delete the "negligent act, error or omission" clause, provides broader coverage than does the original insuring agreement, which includes the above clause, and that given this conflict the endorsement should control.

Moreover, MSA argues based on *Pierce v. Standard Accident Insurance Co.* (1966), 70 Ill. App. 2d 224, 231, 216 N.E.2d 818, that "[t]he circumstances of the issuance of the policy and the object and purpose of the contract are significant and should be considered in determining whether there was coverage." MSA asserts that the purpose of the policy was to provide liability insurance for MSA's performance of its duties under the government air base contract and that the purpose of the endorsement was to tailor the terms of the policy to the particular features of that project. Thus, MSA contends that the trial court's failure to find coverage undercut both the basic purpose and scope of the policy and endorsement.

Contrary to MSA's assertion that the endorsement served to delete the "negligent act, error or omission" clause, we believe that in order to effectively construe the policy as a whole, it is necessary to

retain the above clause. We agree that the original insuring agreement incorporating by reference the schedule provided the same list of services as did the second paragraph of the endorsement, but we further believe that because of the obvious conflict that existed prior to the endorsement with regard to the scope of services covered, the primary function of the endorsement was to alleviate this conflict by providing added clarity. Under this interpretation, the endorsement serves as the single provision listing the services covered, as opposed to looking at both the original insuring agreement and the schedule for such information, and it also expressly deletes the exclusion that caused the conflict.

■ Additionally, this court will look to the purpose of the policy. The instant insurance policy was issued to provide MSA with coverage in its performance of services in both its customary and noncustomary capacity as an architect and engineer. If this policy were interpreted to provide coverage without the negligence requirement, MSA would be able to recover for any and all actions it took in both its customary and noncustomary professional capacity, in effect creating an absolute performance bond. Such an interpretation is far too expansive and cannot be the logical construction for this policy. Therefore, we conclude that the trial court was correct in its construction of the instant policy.

MSA alternatively contends on appeal that Union Insurance has a duty to defend and indemnify MSA because the Nahal complaint, evaluated on its face, contains sufficient allegations of negligent conduct on the part of MSA to potentially meet the requirement of a "negligent act, error or omission." MSA argues that the record reveals through an English translation of the Hebrew complaint that Nahal alleged that MSA failed to properly care for the property of the hotel and failed to maintain and to make necessary repairs as was agreed to in the lease. In response, Union Insurance maintains that the Nahal complaint is solely a breach of contract action and that it does not allege any "negligent acts, errors or omissions." Union Insurance argues that the isolated phrases in the complaint that refer to negligence are nothing more than "gratuitous, conclusory statements which are superfluous" to the overall breach of contract action.

■ It is well established in Illinois that in determining whether the insurer owes a duty to the insured to defend an action brought against him it is the general rule that the allegations of the complaint determine the duty. If the complaint alleges facts within the coverage of the policy or potentially within the coverage of the pol-

icy, the duty to defend has been established. (*Clemmons v. Travelers Insurance Co.* (1981), 88 Ill. 2d 469, 430 N.E.2d 1104; *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 355 N.E.2d 24.) The threshold that the complaint must satisfy to present a claim of potential coverage is low. Where there is doubt as to coverage, it is to be resolved in favor of the insured. (*McFadyen v. North River Insurance Co.* (1965), 62 Ill. App. 2d 164, 209 N.E.2d 833.) Moreover, the insurer can safely and justifiably refuse to defend only when the allegations clearly show on their face that the claim is beyond policy coverage, for the duty to defend is broader than the duty to pay. *La Rotunda v. Royal Globe Insurance Co.* (1980), 87 Ill. App. 3d 446, 408 N.E.2d 928.

MSA cites *Touchette Corp. v. Merchants Mutual Insurance Co.* (1980), 76 App. Div. 2d 7, 429 N.Y.S.2d 952, a case that contains similar factual components as the instant matter. In *Touchette,* Touchette Corporation contracted with the plaintiff to provide certain services. Upon Touchette's failure to perform the contract, the plaintiff asserted causes of action in both negligence and contract. Thereafter, the negligence count was dismissed, and Touchette's insurer disclaimed any obligations to defend its insured on the ground that since the relevant policy was an errors-and-omissions policy and the negligence count was dismissed, the remaining contract count failed to allege any negligence to bring the claim within the policy's coverage. In deciding whether the insurer had a duty to defend Touchette, the court held:

> "It is not the form of the pleadings which determines coverage, however, it is the nature of the insured's conduct and nothing in the language of the policy suggests that claims are to be covered only if sued in negligence. [The insurer] agreed to indemnify Touchette for all sums it is 'legally obligated' to pay because of its 'negligent act[s], error[s], or omission[s]', and if Touchette's conduct comes within this defined risk, it is no less 'legally obligated' to pay an award in a contract action than in a tort action. *** If the proof establishes that the breach was occasioned by a negligent failure to perform, the errors and omissions policy unquestionably provides coverage. [Citations.] If the failure to perform arises from some other cause coverage may not be available but that determination will have to await the trial of the action [Citations]." *Touchette Corp. v. Merchants Mutual Insurance Co.* (1980), 76 App. Div. 2d 7, 10, 429 N.Y.S.2d 952, 954.

Union Insurance has admitted in its brief that it knows of no de-

cided Illinois case, nor have we found one, that has specifically determined whether a breach of contract action, as alleged in the Nahal complaint, would be covered under the "negligent acts, errors or omissions" coverage. Instead Union Insurance relies on a series of older New York State cases which have all been expressly distinguished in the more recent *Touchette* case cited by MSA. Accordingly, having no controlling authority to consult, we are left to interpret the established law as it applies to the specific facts in the instant matter.

There is no question that the allegations of the complaint and not the theory determine whether there is a duty to defend. (*Thornton v. Paul* (1978), 74 Ill. 2d 132, 384 N.E.2d 335.) Thus, the proper focus for this court is on the allegations and whether they describe MSA's conduct such that it is potentially within the policy's coverage and not on the fact that the complaint sounds in contract.

The Nahal complaint alleges that MSA failed to properly maintain, repair and care for the hotel and its property. However, the language used does not indicate whether such failure was a result of negligent conduct on the part of MSA or whether it was an intentional or wilful disregard of its duties. What is apparent is that MSA's conduct caused the lease to be breached and that given the circumstances, it is highly probable that such conduct was indeed negligent. The general rule is that the facts alleged must be within or potentially within the policy coverage. (*Clemmons v. Travelers Insurance Co.* (1981), 88 Ill. 2d 469, 430 N.E.2d 1104.) There can be little doubt that MSA's alleged conduct is potentially within the policy coverage, and if there is any doubt as to coverage, it is to be resolved in favor of MSA. Furthermore, as was stated in *Touchette*, "if the failure to perform arises from some other cause [other than negligent conduct] coverage may not be available but that determination will have to await the trial of the action." *Touchette Corp. v. Merchants Mutual Insurance Co.* (1980), 76 App. Div. 2d 7, 10, 429 N.Y.S.2d 952, 954.

We believe that the Nahal complaint sufficiently alleges facts which are potentially within the policy coverage and that Union Insurance therefore has a duty to defend MSA. However, on this declaratory judgment action, it is not appropriate to determine an ultimate issue of fact in the underlying action, that is whether MSA's conduct was negligent, and therefore this court will not rule on whether Union Insurance has a duty to indemnify MSA. (See *Maryland Casualty Co. v. Peppers* (1976), 64 Ill. 2d 187, 355 N.E.2d 24.) Accordingly, we reverse the trial court's judgment in favor of Union

Insurance and remand the action and order that a judgment be entered in favor of MSA declaring that Union Insurance is obligated to defend MSA against the Nahal complaint.

MSA raises several other additional issues on appeal. MSA contends that an Israeli attorney's affidavit describing the Nahal complaint as alleging a negligent count under Israeli law serves a further support for finding coverage and that Union Insurance should be estopped from denying coverage as a result of its unjustifiable refusal to defend MSA. Given this court's determination to reverse the instant matter and to order Union Insurance to defend MSA, we do not find it necessary to reach the merits of MSA's additional arguments.

For the foregoing reasons, this matter is reversed and remanded.

Reversed and remanded.

LINN, P.J., and JOHNSON, J., concur.