CONTINENTAL CASUALTY COMPANY, Plaintiff-Appellee, v. HOWARD C. FLOMENHOFT, Indiv., *et al.*, Defendants (John A. McGuinn *et al.*, Defendants-Appellants).

First District (1st Division)   No. 1—92—0564

Opinion filed April 25, 1994.

Kane, Obbish, Propes & Garippo, of Chicago (Susan G. Feibus, of counsel), for appellants.

Hinshaw & Culbertson, of Chicago (D. Kendall Griffith, of counsel), for appellee.

JUSTICE BUCKLEY delivered the opinion of the court:

Continental Casualty Company (Continental) brought an action seeking a declaratory judgment that it was not required to defend or indemnify Howard Flomenhoft (Flomenhoft), an attorney, for his legal malpractice in connection with his formation and representation of Morgan Associates (Morgan), a limited partnership, in which Montclair Investments (Montclair) was a limited partner. Besides Flomenhoft, the named defendants are the partners in Montclair.

Continental moved for summary judgment on the grounds that (a) the policy it issued Flomenhoft did not provide coverage because his negligence predated the policy period, and (b) coverage was precluded under the "business exclusion" provision in the policy. The trial judge granted Continental's summary judgment motion "on all bases argued." On appeal, defendants contend: (1) that Flomenhoft's negligent conduct continued during the policy period and did not constitute a single negligent "occurrence" which predated the coverage period; and (2) that the "business enterprise" exclusion does not apply to preclude coverage. We affirm.

Flomenhoft, through his professional corporation Howard C. Flomenhoft, Ltd., was the named insured under a professional liability policy issued by Continental. The coverage period under the policy was from September 7, 1977, through September 7, 1982. The policy provided that Continental would pay all damages which Flomenhoft became legally obligated to pay which arose out of his performance of professional services as an attorney "because of an error, negligent omission or negligent act." The policy further provided that it would apply only "to errors, negligent omissions and negligent acts taking place during the policy period." The policy also explicitly excluded coverage for errors, negligent acts or negligent omissions "occurring while performing professional services for a business enterprise owned by an insured, a business enterprise in which the insured is a partner or a business enterprise which is controlled, managed or operated by an insured."

In the fall of 1976, Flomenhoft began exploring the possibility of setting up a "tax shelter" by forming a limited partnership which would invest in coal mines. At that time, the Internal Revenue Service (IRS) gave favorable treatment to coal mining investments and, therefore, the investors in the limited partnership would gain substantial tax advantages. In early October 1976, Flomenhoft began negotiating with Aminex Corp. (Aminex), an owner of certain mineral rights in coal mines, about the possibility of having a limited partnership formed by Flomenhoft sublease Aminex's mineral rights.

Subsequently, the IRS announced that it was eliminating favorable tax treatment for coal mining investments effective October 28, 1976. The IRS stated, however, that this tax change would not affect deals which were already "in place" on October 28, 1976. According to Flomenhoft, he and Aminex reached an oral agreement on October 28. It is uncontested, however, that no agreement was reached between Flomenhoft and Aminex *prior* to October 28. Additionally, Flomenhoft admitted that the documents creating Morgan Associates, the limited partnership which would sublease

Aminex's mineral rights, were not prepared nor was the partnership agreement signed until after October 28, 1976. Nonetheless, Flomenhoft advised others to use the date of October 28 as the date that Morgan was formed.

Flomenhoft, through his professional corporation, was a 3% limited partner in Morgan. According to defendants, however, neither he nor his corporation "controlled, managed, or operated" Morgan. Additionally, neither he nor his corporation had any management or ownership interest in Montclair.

Flomenhoft, however, was the general counsel for Morgan. In such capacity, he prepared Morgan's partnership agreement and investment memorandum which gave the date of Morgan's formation as October 28, 1976. According to defendants, in reliance upon Flomenhoft's advice that investors would gain substantial tax advantages, Montclair became a limited partner in Morgan on December 29, 1976. Additionally, as counsel to Morgan, Flomenhoft gave continuing legal advice to Morgan's limited partners which included defendants, the partners in Montclair, on numerous subjects including the purported tax savings investors would gain as limited partners in Morgan.

Flomenhoft also prepared the partnership K-1 tax returns for the years 1977 through 1981 which he distributed to Morgan's investors. Moreover, he represented Morgan during its IRS tax audit for the years 1976 and 1977. The IRS subsequently disallowed the tax deductions taken by Morgan on the ground that the limited partners, including Montclair, had not joined the partnership before October 28, 1976.

At the hearing on Continental's motion for summary judgment, Continental argued both that Flomenhoft's negligent acts which caused defendants' injuries constituted a single "occurrence" which predated the policy period and that, even if the policy was implicated, its "business exclusion" provision applied to preclude coverage. Defendants asserted that Flomenhoft's negligence continued through the policy period and that the policy was not triggered until defendants suffered injury. The trial judge accepted both arguments asserted by Continental and granted Continental's motion. Defendants filed this timely appeal.

■ Defendants' first assertion on appeal is that Continental is responsible for coverage because defendants suffered injury during the policy period. Continental, on the other hand, responds that the policy it issued Flomenhoft did not provide coverage because Flomenhoft's negligence predated the policy period. Although a legitimate question of coverage exists, for purposes of this appeal, we will

assume that the policy provided coverage and choose to decide this cause under defendant's second contention.

Summary judgment is only proper if, after reviewing all the pleadings, affidavits, and other evidence on file in the light most favorable to the nonmovant, it is clear that no material question of fact is at issue and that the movant is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1991, ch. 110, par. 2—1005 (now 735 ILCS 5/2—1005 (West 1992)); *Srivastava v. Russell's Barbecue, Inc.* (1988), 168 Ill. App. 3d 726, 730, 523 N.E.2d 30, 33.) The construction of insurance contracts is a question of law and thus a proper subject of motions for summary judgment. *Scottish & York International Insurance Group/ Guarantee Insurance Co. v. Comet Casualty Co.* (1990), 207 Ill. App. 3d 881, 884, 566 N.E.2d 477, 479.

We also note that the general rules of contract construction apply equally to insurance contracts. (*Management Support Associates v. Union Indemnity Insurance Co.* (1984), 129 Ill. App. 3d 1089, 1092, 473 N.E.2d 405, 408.) Therefore, where policy language is clear and unambiguous, it will be given "its plain, ordinary and popular meaning" (*Management Support*, 129 Ill. App. 3d at 1092, 473 N.E.2d at 408) and there is no need for a court to construe that language. (*Mason v. Home Insurance Co.* (1988), 177 Ill. App. 3d 454, 458, 532 N.E.2d 526, 528.) Additionally, we will examine the policy language in light of the policy as a whole. *Management Support*, 129 Ill. App. 3d at 1092, 473 N.E.2d at 408.

Defendants' second contention on appeal is that the "business enterprise" exclusion included within the policy does not apply to preclude coverage. Continental's policy explicitly excluded coverage for Flomenhoft's errors, negligent acts, or negligent omissions "*occurring while performing professional services for* a business enterprise owned by an insured, *a business enterprise in which the insured is a partner* or a business enterprise which is controlled, managed or operated by an insured." (Emphasis added.) Flomenhoft, through his professional corporation, was a 3% limited partner in Morgan. He had no partnership interest, however, in Montclair, the limited partner in Morgan in which defendants were partners. Defendants argue that the relevant business enterprise was Montclair. Defendants maintain that "there should be no dispute that as Flomenhoft acted as attorney for Morgan, he likewise acted as an attorney for Montclair." In support of this contention, defendants cite *Collins v. Reynard* (1992), 154 Ill. 2d 48, 607 N.E.2d 1185, where, according to defendants' interpretation, the Illinois Supreme Court "made it clear that an attorney could be held liable for economic damages caused by the attorney's negligence where the party seeking

relief is an intended third-party beneficiary of the contractual agreement with the attorney." Since Flomenhoft had no partnership interest in Montclair, defendants contend that the exclusion does not preclude coverage.

Continental, on the other hand, asserts that the relevant business enterprise for which Flomenhoft was rendering legal services was Morgan and not Montclair. In support of this assertion, Continental points to *Mursau Corp. v. Florida Penn Oil & Gas, Inc.* (W.D. Pa. 1986), 638 F. Supp. 259, and *Quintel Corp., N.V. v. Citibank, N.A.* (S.D.N.Y. 1984), 589 Supp. 1235, both of which held that an attorney, by virtue of his representation of a limited partnership, is not also the attorney for the limited partners. Since Flomenhoft was a limited partner in Morgan, Continental asserts that the policy exclusion applies.

Although we agree with defendants that an attorney owes a duty to third parties who are intended beneficiaries of his services, this duty is not synonymous with an attorney-client relationship. Flomenhoft clearly owed a duty to defendants and they can surely seek redress for damages caused by his breach of that duty. The question here, however, is whether Continental is responsible, under the terms of its policy, to pay those damages.

The policy specifically excludes coverage for damages caused by Flomenhoft's negligent acts or omissions committed while acting as an attorney for "a business enterprise in which [Flomenhoft] is a partner." In our opinion, the facts do not support the Montclair defendants' assertions that Flomenhoft was their attorney. In fact, defendants alleged in their complaint that Flomenhoft was Morgan's attorney and that defendants relied on his legal expertise "as the attorney for Morgan Associates." Therefore, the relevant business enterprise for purposes of the policy exclusion is Morgan. Since Flomenhoft was a partner in Morgan at the time he committed his negligent acts and omissions, it would appear that the policy exclusion applies to preclude coverage.

Defendants assert, however, that even assuming that Morgan is the relevant business enterprise, "Flomenhoft's partnership interest in Morgan, as a three percent limited partner, did not rise to the requisite general partnership level which could cause the business enterprise exclusion to apply." Defendants argue that the limited rights and obligations of a limited partner make the only reasonable reading of the term "partner" in the policy to be "general partner."

We note that we would exceed our authority if we did not attempt "to effectuate the intent of the parties *as expressed by the contract.*" (Emphasis added.) (*Mason*, 177 Ill. App. 3d at 458, 532 N.E.2d at 528.)

As we stated above, when language in an insurance contract is clear and unambiguous, it must be given its plain, ordinary and popular meaning "without further construction." *Michigan Chemical Corp. v. American Home Assurance Co.* (6th Cir. 1984), 728 F.2d 374, 377.

According to Webster's dictionary, a "partner" is "one of two or more persons associated as joint principals in carrying on any business with a view to joint profit: a member of a partnership." (Webster's Third New International Dictionary 1648 (1981).) According to Webster's, the terms "general partner" and "limited partner" are encompassed by this definition of "partner" and serve merely to describe the legal relationships among partners and to define their differing legal rights, obligations and duties. Although limited partners in reality may only be "passive investors," they are "entitled to share in the profits and losses of the partnership" (see *Kramer v. McDonald's System, Inc.* (1979), 77 Ill. 2d 323, 332, 396 N.E.2d 504, 508) and, as such, are still partners in the ordinary and common meaning of that term.

■ This policy clearly excludes coverage for damages caused by the negligent acts or omissions of Flomenhoft while performing legal services "for a business in which [Flomenhoft] is a *partner.*" (Emphasis added.) The ordinary and common understanding of the term "partner" includes both limited and general partners. There is no basis upon which we can conclude that when the term "partner" is used in a contract it is synonymous with general partner and not meant to include limited partner. If the parties intended a distinction between these two types of business partners, it is not unreasonable to expect that they would have provided for such a distinction in their contract. Thus, Continental is not liable under the policy because Flomenhoft was rendering services for a business in which he was a partner.

Accordingly, for the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

CAMPBELL, P.J., and O'CONNOR, J., concur.