SECOND DIVISION
March 31, 2008

No. 1-07-0526

| | | |
|---|---|---|
| AMERICAN FAMILY MUTUAL INSURANCE COMPANY, | ) ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| v. | ) ) | |
| CONNIE ROTH, Individually and d/b/a/ Roth and Roth Insurance Agency, Inc.; BONNIE ROTH, Individually and d/b/a Roth and Roth Insurance Agency, Inc.; and ROTH AND ROTH INSURANCE AGENCY, INC., d/b/a Roth and Roth Insurance, | ) ) ) ) ) ) ) | Honorable William O. Maki, Judge Presiding. |
| Defendants-Appellants. | ) ) | |

JUSTICE SOUTH delivered the opinion of the court:

This appeal arises from an order of the circuit court of Cook County that granted plaintiff's motion for summary judgment, holding that plaintiff, American Family Mutual Insurance Company (American Family), did not have a duty to defend defendants pursuant to the terms and conditions of the businessowners package policy it issued to defendants. American Family instituted this declaratory judgment action against defendants seeking a determination of its duty to defend the insureds in an underlying federal court action (American Family Mutual Insurance Co. v. Roth, No. 05 C 3839) (hereinafter referred to as the underlying action). The basis of the underlying action was alleged misappropriation of trade secrets.

American Family is a Wisconsin-based insurer that underwrites a broad base of commercial and personal lines of insurance products. Defendants Bonnie Roth and Connie Roth

are the owners of an Aurora, Illinois, insurance agency known as Roth & Roth Insurance. Both Bonnie and Connie worked as exclusive agents of American Family pursuant to the terms of written agency agreements. Connie became an agent in July 1997, and Bonnie became an agent in December 2002.

The agent agreements provided in part that the policies, endorsements, policy records, manuals, materials and supplies furnished by American Family to defendants remained American Family's property and had to be returned within 10 days of the termination of the agency agreements. This included all copies that were in defendants' possession and control. The agreements also contained nonsolicitation clauses that prohibited defendants from soliciting American Family policyholders credited to their account or from inducing them to cancel or replace their American Family policies for one year following the termination of the agent agreements. The agreements also contained a choice of law provision, which provided they would be governed by Wisconsin law.

Additionally, the agent agreements contained a database agreement endorsement that defendants also signed. The database agreements governed defendants' access to American Family's proprietary computer system, software, and database, as well as the return of hard files upon termination of the agency relationship. The database also included customer lists and confidential customer information.

The Wisconsin Uniform Trade Secrets Act (Wis. Stat. Ann. §134.90(1)(c) (West 2001)) defines a trade secret as:

> "[I]nformation, including a formula, pattern, compilation,

program, device, method, technique or process to which all of the following apply:

1. The information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

2. The information is the subject of efforts to maintain its secrecy that are reasonable under the circumstances."

It further provides:

"(2) Misappropriation. No person, including the state, may misappropriate or threaten to misappropriate a trade secret by doing any of the following:

\*\*\*

(b) Disclosing or using without express or implied consent a trade secret of another if the person did any of the following:

\*\*\*

(2) at the time of disclosure or use knew, or had reason to know that he or she obtained knowledge of the trade secret through any of the following means:

\*\*\*

(b) acquiring it under circumstances giving rise to a duty to

maintain its secrecy or limit its use." Wis. Stat. Ann. §134.90(1)(c) (West 2001).

The American Family Web site states that the company can only obtain information from the customers that are to be used in the company's business; the names and addresses of the customers cannot be shared without their written consent; and the sharing of customer lists with another insurer or agency violates the Gramm Leach Bliley Act (GLB) (15 U.S.C.A. §6801 (2002)). Defendants had access to and notice of the contents of the Web site throughout their agency with American Family.

On February 15, 2005, American Family terminated its agent agreements with Bonnie and Connie. At that time, American Family demanded the return of all of its property, including policyholder records. In a letter dated February 17, 2005, American Family reminded the Roths that privacy laws prohibited the disclosure of policyholder information to third parties outside of American Family without the policyholder's authorization. They further reminded them that they may not disclose policyholder information to other insurers or agencies with whom they may become associated.

On or about May 19, 2005, Connie prepared and signed a mailing that solicited at least one American Family customer to conduct business with Roth. The mailing was a letter that contained personal financial information obtained by Connie while she was an agent of American Family. On or about May 21, 2005, the customer contacted American Family to pursue a formal complaint regarding the disclosure of personal information. Following their agency termination, defendants solicited other American Family customers. American Family filed a formal complaint

against defendants with the Illinois Division of Insurance. Defendants had not returned to American Family all of the copies of the customer files and information that were in their possession.

At the trial level, American Family moved for summary judgment to determine the parties' rights and obligations under the policy. Defendants filed a cross-motion for summary judgment on the issue of American Family's duty to defend them in the underlying action. The trial court granted American Family's motion for summary judgment and denied defendants' motion for judgment, finding that American Family did not owe a duty to defend in the underlying action.

Defendants have raised the following issues on appeal: (1) whether the circuit court properly granted summary judgment, finding plaintiff did have a duty to defend the defendants pursuant to the terms and conditions of the businessowners package policy that it issued to defendants, and (2) whether the policy exclusions for breach of contract or trade secret infringement apply to the underlying cause of action.

In appeals from summary judgment rulings, we conduct a *de novo* review. Atlantic Mutual Insurance Co. v. American Academy of Orthopaedic Surgeons, 315 Ill. App. 3d 552, 559 (2000). "The reviewing court must construe all evidence strictly against the movant and liberally in favor of the nonmoving party." Atlantic Mutual, 315 Ill. App. 3d at 559. Where the pleadings, depositions and affidavits show there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2006); Atlantic Mutual, 315 Ill. App. 3d at 559. "If reasonable persons could draw different inferences from undisputed facts, summary judgment should be denied." Atlantic Mutual, 315 Ill. App. 3d at 559.

Defendants maintain that the trial court erred in granting summary judgment to American Family and make the following arguments:

(1) the underlying complaint contains factual allegations of personal and advertising injury that bring the action within the policy's coverage;

(2) American Family had a duty to defend because the underlying action seeks damages in addition to equitable relief;

(3) Count II of the underlying complaint contains allegations that clearly establish a duty to defend;

(4) the factual allegations of the underlying complaint regarding tortious interference with contractual relationships and tortious interference with prospective business expectations unequivocally create a duty to defend;

(5) American Family's duty to defend is established by factual allegations regarding policy provisions that define "use of another's advertising idea" as a "personal and advertising injury"; and

(6) American Family must defend defendants even if coverage only exists under a single, discrete cause of action notwithstanding any possible exclusions of other claims or legal theories.

In order to determine whether the insurer's duty to defend has arisen, the court must compare the allegations of the underlying complaint to the policy language. Outboard Marine Corp. v. Liberty Mutual Insurance Co., 154 Ill. 2d 90, 125 (1992). "The allegations in the underlying complaint must be liberally construed in favor of the insured." Outboard Marine Corp., 154 Ill. 2d at 125. "If the court determines that these allegations fall within, or potentially within, the policy's coverage, the insurer has a duty to defend the insured against the underlying complaint." (Emphasis omitted.) Outboard Marine Corp., 154 Ill. 2d at 125. "[T]he insurer can safely and justifiably refuse to defend only when the allegations clearly show on their face that the claim is beyond policy coverage, for the duty to defend is broader than the duty to [indemnify]." Management Support Associates v. Union Indemnity Insurance Co. of New York, 129 Ill. App. 3d 1089, 1096 (1984). " 'Moreover, if the underlying complaints allege several theories of recovery against the insured, the duty to defend arises even if only one such theory is within the potential coverage of the policy.' " Lexmark International, Inc. v. Transportation Insurance Co., 327 Ill. App. 3d 128, 135 (2001), quoting United States Fidelity & Guaranty Co. v. Wilkin Insulation Co., 144 Ill. 2d 64, 73 (1991).

In the instant case, the underlying complaint has five counts: count I - permanent injunction and other relief for violation of the Wisconsin Trade Secrets Act; count II - violation of the Gramm Leach Bliley Act (15 U.S.C.A. §6801 (2001)) and Health Insurance Portability and Accountability Act (42 U.S.C.A. §1320D-6 (1996)); count III - breach of contract; count IV - tortious interference; and count V - tortious interference with prospective business expectations.[1]

---

[1]Count II was dismissed and is not part of this appeal.

7

1-07-0526

"A court's primary objective in construing the language of an insurance policy is to ascertain and give effect to the intentions of the parties as expressed by the language of the policy." Valley Forge Insurance Co. v. Swiderski Electronics, Inc., 223 Ill. 2d 352, 362 (2006). We give the policy's words their " 'plain, ordinary, and popular meaning,' " Lexmark, 327 Ill. App. 3d at 135, quoting Outboard Marine Corp., 154 Ill. 2d at 108. Little weight is given to the legal label that characterizes the allegations of the underlying complaint; rather, the determination focuses on whether the alleged conduct arguably falls within at least one of the categories of wrongdoing listed in the policy. Lexmark, 327 Ill. App. 3d at 135-36.

The American Family policies at issue were effective as of September 15, 2004, and February 22, 2005. The 2004 American Family policy covered both property and liability. Under the liability section, the policy stated as follows:

"a. We will pay those sums that the insured becomes legally

obligated to pay as damages because of 'bodily injury,' 'property

damage,' or 'personal and advertising injury' to which this

insurance applies. We will have the right and duty to defend the

insured against any 'suit' seeking those damages. However, we

will have no duty to defend the insured against any 'suit' seeking

damages for 'bodily injury,' 'property damage,' or 'personal and

advertising injury,' to which this insurance does not apply."

The coverage section of the policy, under liabilities, further indicates that it applies:

"(2) To 'personal and advertising injury' caused by an

8

offense arising out of your business, but only if the offense was committed in the 'coverage territory' during the policy period."

The exclusions portion of the policy, in terms of "personal and advertising injury," states that it does not apply to the following:

"Personal and advertising injury:

(1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another an would inflict 'personal and advertising injury' ;

(2) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

\* \* \*

(6) Arising out of a breach of contract, except an implied contract to use another's advertising idea in your 'advertisement';

\* \* \*

(13) Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. However, this exclusion does not apply to infringement in your 'advertisement,' of copyright trade dress or slogan."

The policy defines "personal and advertising injury" as "injury" including consequential "bodily injury," arising out of one or more of the following offenses, in pertinent part:

9

"e. Oral or written publication, in any manner, of material

that violates a person's right of privacy;

f. The use of another's advertising idea in your

'advertisement'; or

g. Infringing upon another's copyright, trade dress or

slogan in your 'advertisement.' "

The 2005 American Family policy only changed the insured's mailing address and did not alter the terms of coverage.

The underlying complaint states two causes of action, *i.e.,* breach of contract based upon alleged violations of the agent agreements and tortious interference arising from defendants' alleged misappropriation of information which was gleaned from American Family's customer database. "The complaint must be read as a whole in order to assess its true nature." United Fire & Casualty Co. v. Jim Maloof Realty, Inc., 105 Ill. App. 3d 1048, 1050 (1982).

Although the policy indicates it applies to "personal and advertising injury" arising from oral or written publication, in any manner, of material that violates one's right of privacy, it also specifically excludes from coverage any personal and advertising injury that: (1) is caused by or at the discretion of the insured with the knowledge that the act would violate the rights of another and would inflict personal and advertising injury; (2) arises from breach of contract; and (3) arises out of the copyright, patent, trademark or trade secret infringement or other intellectual property rights. Defendants' alleged written solicitation of American Family's customers whose personal and confidential information was allegedly extrapolated from the American Family computer

database was precisely the type of material that is generally covered under the policy as a "personal and advertising injury." However, the policy exclusions specifically exclude any injury that is caused by the insured, knowing that the act would violate the rights of another and cause such injury, arose from breach of contract, or arose from trademark or trade secret infringement. Each of these three elements is present.

First of all, defendants' alleged conduct concerning American Family's computer database was done knowingly because the agent agreements specifically required them to relinquish any American Family property within 10 days of termination of the agency relationship and barred them from soliciting any of their former customers for one year after termination of the agency relationship. These alleged actions of defendants constitute a breach of the agency agreements; and the alleged retention and subsequent use of confidential information which were gleaned from American Family's database and computer system amounts to trademark and trade secret infringement. As such, the allegations of the underlying action do not fall within, or potentially within, the policy's coverage. For that reason, American Family does not owe a duty to defend the defendants.

This result is consistent with this court's holding in United Fire & Casualty, 105 Ill. App. 3d 1048 (1982). In that case, plaintiffs issued a "Real Estate Agents Errors and Omissions" insurance policy to defendant, who was a real estate broker. The policy provided coverage for any claim against the insured caused by any negligent act or omission of the insured but did not apply to any "dishonesty, intentional fraud, criminal or malicious act, libel or slander." United Fire & Casualty, 105 Ill. App. 3d at 1049. A lawsuit was filed against the defendant, alleging a

11

1-07-0526

breach of his fiduciary duty as a real estate broker whereby he allegedly induced plaintiffs to sell their home at a price grossly below its fair market value to an agent of the defendant, who in turn resold the property at a substantial profit. United Fire & Casualty, 105 Ill. App. 3d at 1049. The defendant tendered his demand to defend to United, which denied coverage and refused to undertake the defense. United then filed a declaratory judgment action seeking a declaration concerning coverage and its duty to defend under the policy.

The appellate court in United found the underlying complaint essentially stated one cause of action, that of intentional fraud, and that the complaint must be read as a whole in order to assess its true nature. The court further held that since the factual allegations of the complaint were premised upon only one theory of recovery, that of intentional fraud, and did not fall within the potential coverage of the insurance policy, United had no duty to defend its insured. United Fire & Casualty, 105 Ill. App. 3d at 1050.

Similarly, in the case at bar, because the allegations of the underlying action do not fall within or potentially within the policy's coverage, American Family does not owe a duty to defend defendants in the underlying action.

Next, defendants contend the policy exclusions for breach of contract or trade secret infringement should not apply to a cause of action that does not sound in breach of contract or trade secret infringement. However, as stated above, the underlying complaint has to be read as a whole in order to assess its true nature, regardless of the label given to characterize its allegations. Lexmark, 327 Ill. App. 3d at 135-36; United Fire & Casualty, 105 Ill. App. 3d at 1050. The underlying complaint specifically alleges breach of contract in count III, seeks an injunction based

12

upon alleged violations of the Wisconsin Trade Secrets Act in count I, and alleges tortious interference based upon defendants' alleged actions of trade secret infringement in counts IV and V. Therefore, we find the underlying action is based upon a breach of contract and trade secret infringement.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

HOFFMAN, P.J., and HALL, J., concur.