2015 IL App (2d) 150016
No. 2-15-0016
Opinion filed December 23, 2015

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| ILLINOIS CASUALTY COMPANY, | ) | Appeal from the Circuit Court |
| | ) | of Lake County. |
|     Plaintiff and Counterdefendant- | ) | |
|     Appellee, | ) | |
| | ) | |
| v. | ) | No. 09-MR-844 |
| | ) | |
| WEST DUNDEE CHINA PALACE | ) | |
| RESTAURANT, INC., | ) | |
|     Defendant, | ) | |
| | ) | |
| (Wellington Homes, Inc., Individually and on | ) | Honorable |
| Behalf of All Others Similarly Situated, | ) | Diane E. Winter, |
| Defendant and Counterplaintiff-Appellant). | ) | Judge, Presiding. |

_____

JUSTICE McLAREN delivered the judgment of the court, with opinion.
Justices Jorgensen and Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1    This is a declaratory judgment action involving a dispute over insurance coverage for a fax-blast case.  The issue is whether plaintiff Illinois Casualty Company's (ICC) policy exclusion (hereinafter Laws exclusion) applies to the allegations in the complaint in the underlying litigation.  If the Laws exclusion applies, then ICC's duty to defend defendant, West Dundee China Palace Restaurant, Inc. (West Dundee), was never triggered.  On cross-motions for summary judgment, the trial court initially ruled that ICC had a duty to defend.  On a motion to reconsider, the trial court ruled that ICC had no duty to defend or indemnify.  We affirm**.**

¶ 2                                    I. BACKGROUND

¶ 3                     A. The Underlying Litigation (No. 09-CH-1577)

¶ 4     The following pertinent facts are taken from the record on appeal.  On August 4, 2009, Wellington Homes, Inc., individually and as the representative of a class of all others similarly situated (Wellington), filed a second amended complaint against West Dundee, Zhaowei Li, and Liwen She.  On November 18, 2010, Wellington filed a third amended complaint against West Dundee, Ahmad Azmi, and Tehmini Azmi.  The complaint's preliminary "Statement" began: "This case challenges [West Dundee's] practice of faxing unsolicited advertisements."  The preliminary "Statement" further alleged that "The federal [Telephone Consumer Protection Act of 1991 (TCPA) (47 U.S.C. § 227 *et seq.* (2000))], prohibits a person or entity from faxing or having an agent fax advertisements without the recipient's prior express invitation or permission. The TCPA provides a private right of action and provides statutory damages of $500 per violation."

¶ 5     The complaint contained three counts: count I alleged a violation of the TCPA; count II alleged conversion; and count III alleged violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 2010)).  Each count incorporated the same factual allegations: on or about May 16, 2006, West Dundee faxed to Wellington an advertisement, which was attached to the complaint as "Exhibit A"; Wellington had not invited or given West Dundee permission to fax advertisements to it; and West Dundee faxed "the same or similar unsolicited facsimiles" to "more than 39 other recipients without first receiving the recipients' express permission or invitation. [West Dundee's] facsimiles did not display a proper opt out notice as required by 64 C.F.R. 1200."

¶ 6     Count I of the complaint proposed the following class:

"All persons who (1) on or after four years prior to the filing of this action, (2) were sent

telephone facsimile messages of material advertising the commercial availability of any

property, goods, or services by or on behalf of [West Dundee], (3) with respect to whom

[West Dundee] cannot provide evidence of prior express permission or invitation for the

sending of such faxes, (4) with whom [West Dundee] does not have an established

business relationship, and (5) which did not display a proper opt out notice."

The class proposed in count II was: "All persons who on or after a date of five years prior to the

filing of this action, were sent telephone facsimile messages by or on behalf of [West Dundee]."

The class proposed in count III was: "All persons in Illinois who on or after a date of three years

prior to the filing of this action, were sent telephone facsimile messages by or on behalf of [West

Dundee]."

¶ 7                    B. The Declaratory Judgment Action (No. 09-MR-844)

¶ 8      West Dundee and the individual defendants failed to answer ICC's complaint and the

trial court entered default judgments in ICC's favor and against them, stating, "this Order is not

binding on [Wellington] with respect to any argument they may have regarding whether there is

insurance coverage."  ICC filed a complaint and an amended complaint for declaratory judgment

against West Dundee and Wellington.

¶ 9      On February 3, 2010, Wellington filed a counterclaim for declaratory judgment against

ICC, alleging that ICC owed a duty to defend and indemnify West Dundee in the underlying

lawsuit.  On March 8, 2011, ICC filed the present second amended complaint for declaratory

judgment, alleging that it had no duty to defend or indemnify because the policy does not apply

to the allegations in the underlying complaint, due to the following exclusions:

"A. Coverages

1. Bodily Injury And Property Damage

* * *

g. Exclusions—Applicable To Bodily Injury And/Or Property Damage

This insurance does not apply to:

* * *

(4) Laws

Any liability or legal obligation of any insured with respect to 'bodily injury' or 'property damage' arising out of any of the following:

(g) The Telephone Consumer Protection Act (TCPA); or

(h) Any amendments to these other laws or by any other similar statutes, ordinances, orders, directives or regulations."

¶ 10 ICC and Wellington filed cross-motions for summary judgment. On October 11, 2011, the trial court, Judge David M. Hall presiding, denied ICC's motion for summary judgment and granted in part Wellington's motion for summary judgment, ruling that ICC "had a duty to defend in the underlying action." The trial court did not decide the issue of whether ICC had a duty to indemnify. On February 21, 2013, ICC filed a motion to reconsider, which the trial court denied on July 11, 2013. On May 20, 2014, ICC filed a "Surreply In Support of [Its] Motion to Reconsider," citing this court's May 2, 2014, decision, *G.M. Sign, Inc. v. State Farm Fire & Casualty Co.*, 2014 IL App (2d) 130593.

¶ 11 On December 2, 2014, the trial court, Diane E. Winter presiding, (1) granted ICC's motion to reconsider based on *G.M. Sign*; (2) vacated the summary judgment order in favor of

Wellington and against ICC; (3) ruled that ICC had no "duty or obligation to defend or indemnify" West Dundee for liability or damages arising from the underlying lawsuit; and (4) entered summary judgment in favor of ICC and against Wellington and West Dundee "on all counts of [ICC's] Complaint for Declaratory Judgment" and denied summary judgment "with respect to [Wellington's] Counterclaim for Declaratory Judgment." The trial court stated, "Based on the reasoning and holding of the *G.M. Sign v. State Farm* decision, the court finds the ICC policy exclusion language would apply to all counts of Wellington's underlying complaint and therefore, did not trigger a duty to defend or indemnify under the policy." Wellington filed its notice of appeal on December 30, 2014.

¶ 12                                    II. ANALYSIS

¶ 13     This matter is before us on the grant of summary judgment in favor of ICC. Summary judgment is appropriate where the pleadings, depositions, and admissions on file, together with any affidavits and exhibits, when viewed in the light most favorable to the nonmoving party, indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2014). We review *de novo* a trial court's entry of summary judgment. *Standard Mutual Insurance Co. v. Lay*, 2013 IL 114617, ¶ 15.

¶ 14     ICC and Wellington sought declaratory judgments on insurance coverage. Wellington's underlying lawsuit is currently pending against West Dundee. The trial court ruled that ICC's Laws exclusion applied to the underlying complaint and that therefore ICC had no duty to defend or indemnify West Dundee. Wellington argues that the trial court erred because: (1) ICC's Laws exclusion is limited to liability under the TCPA; and (2) even if the exclusion language at issue in *G.M. Sign*, 2014 IL App (2d) 130593, is the same as the Laws exclusion, ICC has a duty to defend based on other Illinois cases.

¶ 15    In a declaratory judgment action such as the case at bar, where the issue is whether the insurer has a duty to defend pursuant to an insurance policy, a court ordinarily looks first to the allegations in the underlying complaint and compares those allegations to the relevant provisions of the insurance policy. *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 455 (2010); *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 107-08 (1992). "An insurer may not justifiably refuse to defend an action against its insured unless it is *clear* from the face of the underlying complaints that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage." (Emphasis in original.)  *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73 (1991). However, an insurer may properly refuse to defend if it is clear from the face of the complaint that the allegations fail to state facts that bring the case within, or potentially within, the policy's coverage. *Id.*; *Erie Insurance Exchange v. Compeve Corp.*, 2015 IL App (1st) 142508, ¶ 17. Moreover, where a court properly holds that an insurer has no duty to defend, the court may also hold that the insurer has no duty to indemnify. *West Bend Mutual Insurance Co. v. Rosemont Exposition Services, Inc.*, 378 Ill. App. 3d 478, 486 (2007).

¶ 16    When construing the language of an insurance policy, a court's primary objective is to ascertain and give effect to the intentions of the parties as expressed in their insurance contract. *Wilson*, 237 Ill. 2d at 455. To ascertain the meaning of the policy's language and the parties' intent, the court must construe the policy as a whole and consider the type of insurance purchased, the nature of the risks involved, and the overall purpose of the insurance contract. *Travelers Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278, 292 (2001); *Outboard Marine*, 154 Ill. 2d at 108. If the words of the policy are clear and unambiguous, the court must afford them their plain and ordinary meaning. *Id.* The underlying complaint and insurance policy must be liberally construed in favor of the insured in determining whether there is a duty

to defend.  *Wilkin Insulation*, 144 Ill. 2d at 74.  The construction of the provisions of an insurance policy involves a question of law, which we review *de novo*.  See *Wilson*, 237 Ill. 2d at 455; *Outboard Marine*, 154 Ill. 2d at 108.

¶ 17    Here, the trial court determined that this case is controlled by *G.M. Sign*, 2014 IL App (2d) 130593.  In *G.M. Sign*, this court held that an insurer had no duty to defend in an underlying fax-blast class-action lawsuit alleging (1) violations of the TCPA, (2) common-law conversion, and (3) violations of the Illinois Consumer Fraud and Deceptive Business Practices Act.  *G.M. Sign*, 2014 IL App (2d) 130593, ¶ 6.  The insurer's policy excluded coverage for " '[b]odily injury, property damage, personal injury, or advertising injury arising directly or indirectly out of any action or omission that violates or is alleged to violate *** [t]he Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;  or *** [a]ny statute, ordinance or regulation, other than the TCPA *** that prohibits or limits the sending, transmitting, communicating or distribution of material or information.' "  (Emphasis omitted.) *Id.* ¶ 8.  Regarding the second and third claims, this court determined that the duty to defend was not triggered, because these claims were premised on the same facts alleged in the TCPA claim and were otherwise intentionally vague.  *Id.* ¶¶ 30-34.

¶ 18    In this case, Wellington recognizes that the Laws exclusion applies to its first count, alleging violations of the TCPA.  However, Wellington argues that the remaining two counts, alleging common-law conversion and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, are sufficient to trigger a duty to defend, because the Laws exclusion is different from the exclusion at issue in *G.M. Sign*.  Wellington notes that the exclusion in *G.M. Sign* excluded coverage for " '[b]odily injury, property damage, personal injury, or advertising injury arising *directly or indirectly out of* any action or omission that violates or is alleged to violate *** [t]he Telephone Consumer Protection Act (TCPA), including any amendment of or

addition to such law \*\*\*.' " (Emphasis in original.) *Id.* ¶ 8. Wellington argues that, because the Laws exclusion does not contain the words "directly or indirectly," coverage is excluded only for liability and legal obligations arising out of the TCPA itself. We disagree with Wellington.

¶ 19 The allegations in the remaining two counts of the underlying complaint completely fail to state facts that either actually or potentially bring the case within, or potentially within, the policy's coverage. The policy excludes "[a]ny liability or legal obligation of any insured with respect to \*\*\* 'property damage' arising out of \*\*\* The Telephone Consumer Protection Act (TCPA); or \*\*\* any other similar statutes, ordinances, directives, orders or regulations." Counts II and III allege that West Dundee is liable for common-law conversion in that it sent "unsolicited faxes," and "converted [the underlying plaintiffs'] fax machines, toner, paper, and employees' time" to its own use and that it violated the Illinois Consumer Fraud and Deceptive Business Practices Act by engaging in the unfair practice of "sending unsolicited and unauthorized faxes." Common to all three counts are allegations that West Dundee sent the unsolicited faxes without the express permission or invitation of the underlying plaintiffs and that the faxes did not display a "proper opt out notice as required by 64 C.F.R. 1200."[1] Common

---

[1] The TCPA prohibits the sending of an "unsolicited advertisement" to a "telephone facsimile machine" unless the sender has consent or an established business relationship with the recipient and the advertisement contains an opt-out notice "meeting the requirements under paragraph (2)(D)." 47 U.S.C. § 227(b)(1)(C)(iii) (2012). The statute itself does not expressly require that an opt-out notice be included in solicited or consented-to fax advertisements. However, the most pertinent regulation extends the opt-out-notice requirement to such fax advertisements, stating: "A facsimile advertisement that is sent to a recipient that has provided prior express invitation or permission to the sender must include an opt-out notice that complies

2015 IL App (2d) 150016

to all three counts is the allegation that West Dundee sent to the underlying plaintiffs faxes that marketed its goods or services.

¶ 20    The underlying complaint must be read as a whole to assess its true nature. *American Family Mutual Insurance Co. v. Roth*, 381 Ill. App. 3d 760, 766 (2008). Further, little weight is given to the legal label under which a count is brought; rather, the determination regarding whether there is a duty to defend focuses on the conduct alleged. *Id.* at 765. In the underlying complaint here, although count II is labeled "conversion" and count III is labeled "Illinois Consumer Fraud and Deceptive Business Practices Act," the conduct alleged in those counts constitutes nothing more than a rephrasing of the conduct alleged in count I; that West Dundee violated the TCPA by "sending advertising faxes to [the underlying plaintiffs] without first obtaining their prior express permission or invitation." All three counts allege property damage arising out of the TCPA, similar statutes, or orders. See *Northbrook Property & Casualty Co. v. Transportation Joint Agreement*, 194 Ill. 2d 96, 99 (2000). Therefore, Wellington's complaint did not trigger ICC's duty to defend.

¶ 21    Wellington criticizes *G.M. Sign*, 2014 IL App (2d) 130593, as absolving the insurer, State Farm, of its duty to defend, based on the underlying complaint's "vagueness." Wellington argues that ICC has a duty to defend because the "bare allegations of the complaint leave open the possibility" of coverage. Wellington cites *Illinois Tool Works, Inc. v. Travelers Casualty & Surety Co.*, 2015 IL App (1st) 132350, for the proposition that "vague, ambiguous allegations against an insured should be resolved in favor of finding a duty to defend." *Id.* ¶ 26. *Illinois Tool Works* is distinguishable from the case at car.

---

with the requirements in paragraph (a)(4)(iii) of this section." 47 C.F.R. § 64.1200(a)(4)(iv) (2013).

¶ 22    *Illinois Tool Works* involved a myriad of toxic-tort cases where the plaintiffs alleged that while working as welders they were injured when they were exposed to hazardous chemicals manufactured by Illinois Tool Works and other manufacturers. *Id*. ¶ 4. Some of the lawsuits alleged that exposure to Illinois Tool Works products resulted in injuries, but they did not specifically allege when the exposure or injuries occurred. *Id*. ¶ 23. All of the insurers' policies contained provisions that required the insurers to defend Illinois Tools Works in any suit brought against it for bodily injury, even if the allegations in the suit were false or groundless. *Id*. ¶ 5. The parties did not dispute whether the injuries alleged in the underlying complaints would be covered by the policies. *Id*. Rather, the insurers argued that they had no duty to defend because in some of the complaints there were no allegations regarding when the injuries occurred and therefore, it was unknown whether Illinois Tool Works was covered by the policies. *Id*. ¶ 10. The appellate court held that "the time of the injury is a factual uncertainty that, until resolved, gives rise to the duty to defend." *Id*. ¶ 29.

¶ 23    In this case, there is no factual uncertainty regarding time or anything else that is relevant. Wellington's underlying three-count complaint alleges that, on one specific date, West Dundee faxed one specific unsolicited one-page advertisement to the underlying plaintiffs. Thus, all three counts alleged property damage explicitly excluded by ICC's policy. Therefore, *Illinois Tool Works* is distinguishable from this case.

¶ 24    Next, Wellington argues that the Laws exclusion is inapplicable because "arising from" must be interpreted narrowly and therefore we should apply a "proximate cause" construction rather than a "but for" construction. Wellington argues that the broader "but for" construction is applicable only to coverage provisions, whereas the narrower "proximate cause" construction is applicable to exclusion provisions. Wellington criticizes *G.M. Sign*, 2014 IL App (2d) 130593, as interpreting "arising from" broadly and applying the "but for" causation test to expand the

exclusion. This argument is confusing because it is neither a reasonable interpretation of the policy language nor supported by case law.

¶ 25    Although policy terms that limit an insurer's liability are liberally construed in favor of coverage, this rule of construction applies only when the policy is ambiguous. *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17 (2005). A term is ambiguous when it is subject to more than one reasonable interpretation. *Id.* We "are not authorized to exercise our inventive powers and pervert the plain language of the policy in order to create an ambiguity where none exists." *Oakley Transport, Inc. v. Zurich Insurance Co.*, 271 Ill. App. 3d 716, 722 (1995).

¶ 26    In this case, Wellington attempts to create an ambiguity where none exists. Where a term in an insurance policy is not defined, we afford that term its plain, ordinary, and popular meaning; that is, we look to its dictionary definition. See *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 424, 436 (2010). "Arise" means to "originate; to stem (from)." Black's Law Dictionary 115 (8th ed. 2004). These definitions confirm that the policy excludes coverage for "[a]ny liability or legal obligation of any insured with respect to *** 'property damage' [originating or stemming from] *** The Telephone Consumer Protection Act (TCPA); or *** any other similar statutes, ordinances, directives, orders or regulations." Wellington offers no other reasonable interpretation of the Laws exclusion. Therefore, the plain language of the policy excludes coverage for property damage as alleged in Wellington's complaint. Accordingly, the trial court properly granted summary judgment in ICC's favor and against Wellington.

¶ 27    Wellington cites *United Services Automobile Ass'n v. Dare*, 357 Ill. App. 3d 955, 969-70 (2005), and *Oakley*, 271 Ill. App. 3d 716, to support its argument. In *Dare*, the appellate court determined that the insurer had a duty to defend because the terms "ownership" and "maintenance" were ambiguous and, therefore, the provisions had to be resolved against the

insurer and in favor of coverage. *Dare*, 357 Ill. App. 3d at 968, 971. In this case no term at issue is ambiguous. Therefore, *Dare* is distinguishable from this case.

¶ 28 In *Oakley*, the appellate court held that there was no coverage because the term "arising out of" contained in a policy exclusion was not ambiguous and, therefore, the term would not be construed in favor of coverage. *Oakley*, 271 Ill. App. 3d at 721-22. In this case, we, like the *Oakley* court, determine that "arising from" is not ambiguous and that therefore we need not construe the term in favor of coverage. Accordingly, *Oakley* does not support Wellington's argument.

¶ 29 Lastly, we take issue with Wellington's assertion that in *G.M. Sign, Inc. v. Schane*, 2013 IL App (2d) 120434, this court held that "G.M. Sign filed an amended complaint, which potentially brought the claims within the insurance policy." *Id*. ¶ 41. Wellington quotes *Schane* out of context. Wellington's misuse of this sentence is disingenuous at best. As we have previously explained, "we reject [the] assertion that in *Schane* we determined that the amended complaint alleged claims that potentially fell within coverage."[2] *G.M. Sign*, 2014 IL App (2d) 130593, ¶ 39. Accordingly, nothing in *Schane* supports Wellington's positions or conflicts with this opinion.

---

[2] We further explained, "we assumed, *without deciding*, that for the purpose of demonstrating State Farm's due diligence with respect to the original action, the amended complaint potentially brought the claims stated therein within coverage. We said, in other words, that, even if the amended complaint stated claims that potentially would trigger coverage, State Farm's refusal to defend did not indicate a lack of due diligence, because the amended complaint was filed only after the case was settled. Nothing in the present opinion conflicts with *Schane*." (Emphasis in original.) *G.M. Sign*, 2014 IL App (2d) 130593, ¶ 40.

¶ 30                                    III. CONCLUSION

¶ 31      For the reasons stated, we affirm the trial court's judgment.

¶ 32      Affirmed.